*(129 So. 671)*

**PONTCHARTRAIN APARTMENTS, Inc., v.
MARYLAND CASUALTY CO. et al.**

No. 30594.

July 2, 1930.

Rehearing Denied July 19, 1930.

P. M. Milner and Milner & Porteous, all of New Orleans, for appellant Maryland Casualty Co.

Edward Rightor and Edwin J. Prinz, both of New Orleans, for appellee Albert Weiblen Marble & Granite Co.

Lemle, Moreno & Lemle, of New Orleans, for appellee Loeb Stone Co.

O. P. Lambert, of Youngstown, Ohio, and McCloskey & Benedict, of New Orleans, for appellee Truscon Steel Co.

Lazarus, Weil & Lazarus, of New Orleans (Herman S. Lindy, of New Orleans, of coun-

sel), for appellee Pontchartrain Apartments, Inc.

ST. PAUL, J.

This is a concursus proceeding. J. V. and R. T. Burkes undertook to construct an apartment building for plaintiff, and the Maryland Casualty Company became surety on the contractors' bond. The building was ultimately finished, but the contractors left unpaid bills recorded against the building of $19,425.60. In addition to this there was a claim by the owner against the contractor for alleged unfinished work amounting to $3,598.65, and a counterclaim by the contractors against the owner for alleged additional extra work amounting to $12,083.82.

The owner filed a concursus proceeding, and a commissioner was appointed to hear the matter. During the hearing before the commissioner the contractors' counterclaim for alleged additional extra work was abandoned; the claim of the owner against the contractors for alleged unfinished work was compromised; all lien holders were paid, except four aggregating $6,979.02. And the only question before the court at present is whether these four claims have been extinguished by novation, or otherwise, and the amount of the fee to be paid the attorney for plaintiff, and of the fee to be paid the commissioner.

## I.

The claims of the Loeb Stone Company for $924.28, of the Albert Weiblen Marble & Granite Company for $790, and of the American Sheet Metal Works for $2,671.24, are all in the same condition. It is claimed by the surety that these claims were novated because the claimants took the contractors' notes for their claims. We do not think there was any novation. "The acceptance by a creditor of his debtor's note for an open account does not novate the debt shown by the account. The note merely changes the form of the indebtedness. It does not extinguish it." W. W. Carre Co. v. Stewart & Co., 166 La. 318, 117 So. 238, 239, and authorities there cited. The fact that the claimants received the contractors' notes "in payment" of the claims makes no difference. In matters of novation, the intention of the parties to substitute the new for the old debt, and to extinguish the original debt absolutely, must clearly appear. Rev. Civ. Code, art. 2190. And it will never be presumed that a claimant intended to surrender a well-secured claim for one no better secured or not secured at all. Sucker Drill Co. v. Loewer & Co., 114 La. 403, 38 So. 399.

## II.

The claim of the Truscon Steel Co. for $2,643 is in the same condition, except in two particulars. The first is that the contractors owed it two accounts, to wit, this account for $2,643, and account due upon a job at Natchez, Miss., for $3,382, and the contractors sent a note for $6,025 to cover both accounts. But the evidence satisfies us that the note was accepted by the steel company only as additional security (there being some stock annexed thereto) and under the express understanding that it was not to waive its lien on this building. The other circumstance is that the note given was secured by 67 shares of stock in the plaintiff company, which were surrendered by the steel company when the contractors went into bankruptcy, thereby (it is claimed) discharging the surety on the contractors' bond, to wit, the Maryland Casualty Company. It is shown that the stock was given in pledge within four months of the bankruptcy, but it is not shown that the steel company knew that the contractors were insolvent when they received the pledge, hence the pledge was not an undue preference and

should not have been surrendered. Collyer on Bankruptcy (13th Ed.) p. 1248. However, this did not discharge the surety except pro tanto, and to the extent of the value of the stock surrendered. Alexandria Bank & Trust Co. v. Honeycutt, 161 La. 261, 108 So. 475, and authorities there cited. But the record before us does not show the value of the stock surrendered, and hence all we can do is to reserve the right of the surety to recover from the steel company the value of the stock at the time of its surrender to the trustee in bankruptcy.

### III.

The building contract herein, to which the surety bound itself in solido with the contractor, provides that, "In the event it shall be necessary for the owner to employ an attorney at law in connection with the enforcement of this contract or the protection of any of the owner's rights under this contract, the fee of such attorney at law (limited to ten per cent. of the amount in dispute) shall be a charge against said contractors and their surety, as shall also be the cost of cancelling all liens, privileges and encumbrances which may be recorded against said building and arising out of this contract or out of any work done by the contractors on said building."

The uncontradicted testimony in this record is that from the first part of the year 1927 until the compromise of the owners claim for unfinished work, to wit, on January 10, 1929, the owner was in constant need of an attorney's services in connection with the enforcement of this contract; that $19,425.60 of liens were recorded against the building, which had to be canceled, and the owner had a claim of $3,598.65 against the contractor for alleged unfinished work. This aggregated $23,024.25, exclusive of the counterclaims of the contractors against the owner which was abandoned. For these services the trial judge allowed $2,302.45 as attorney's fees, and after due consideration we have concluded that we cannot see wherein said allowance is excessive.

### IV.

The trial judge fixed the fees of the commissioner at $1,500. In our opinion that was too much. The commissioner had altogether some half dozen hearings, and we are informed that he was present perhaps as often again when the parties did not attend. The points involved were not unusually difficult, and our conclusion is that his fee should be reduced to $1,000.

We have also concluded to fix the costs of appeal against the appellant, notwithstanding the reduction in the commissioner's fee and the reservation in favor of the appellant against the Truscon Steel Company. Act No. 229 of 1910.

### Decree.

It is therefore ordered that the judgment appealed from be amended by reducing the fee of the commissioner from $1,500 to $1,000, and by reserving the right of the Maryland Casualty Company to recover of the Truscon Steel Company, the value of the 67 shares of the Pontchartrain Apartments, Incorporated, at the time of their surrender to the trustee in bankruptcy; and as thus amended the judgment appealed from is affirmed at the cost of the appellant.