GLADNEY, Judge.
The Sterlington Bank has appealed from a judgment in favor of the intervenor, recognizing intervenor’s privilege for unpaid wages with entitlement to payment from the proceeds of a foreclosure sale in the hands of the Sheriff of Ouachita Parish. The material facts necessary in determining whether intervenor is entitled to the decree in his favor are not in dispute.
Grady E. Kight was employed by Terzia Lumber & Hardware, Inc., continuously from June, 1958, until March 14, 1961, when the corporation ceased to operate as a business. His position was that of a bookkeeper and office manager. He was paid weekly by check which he sometimes cashed out of the cash drawer of his employer when there was sufficient money therein, and at other times he took the checks to various stores where he negotiated them for cash and merchandise. At the time his employer ceased to do business Kight had received for wages six pay checks which he had negotiated between the dates of November 18, 1960, and January 16, 1961. None of the checks was honored by the maker upon presentation at the bank, and all were returned to the holders because of insufficient funds in the account of Terzia Lumber & Hardware, Inc. Kight testified that each of the holders of those checks had demanded payment from him as endorser. One of the holders, A & P Store, secured judgment casting him with the Terzia Lumber & Hardware, Inc. Another holder instituted suit against inter-venor in the City Court. None of the holders of the six checks was made a party in the instant proceeding.
Counsel for appellant bank argues the trial court erred in recognizing the privilege of intervenor and in allowing him, over objections, to introduce evidence during the trial to support his claim after it had been disclosed that he was not the hold-der of any of the checks.
In arguing that intervenor is not entitled to a privilege, counsel contends the privilege accorded under LSA-C.C. arts. 3191 and 3214 is inoperative for the evidence discloses intervenor was employed by the week and such employment may not be considered a continuing contract that could preserve the lien beyond the term of em *235 ployment. The relevant articles of the Civil Code are as follows:
LSA-C.C. Article 3191
“The debts which are privileged on all the movables in general, are those hereafter enumerated, and are paid in the following order: * * * (6) The salaries of clerks, secretaries, and other persons of that kind.”
LSA-C.C. Article 3214
“Although clerks, secretaries and other agents of that sort can not be included under the denomination of servants, yet a privilege is granted them for their salaries for the last year elapsed, and so much as has elapsed of the current year. This privilege, however, can not be enforced until after that of the furnishers of provisions.”
This argument of counsel has been answered in the case of United Credit Company, Inc. v. Croswell Company, Inc., 219 La. 993, 54 So.2d 425, 426 (1951), which holds:
“From the very nature of the employment of the secretary it could not be considered anything other than a continuous contract. She remained in the employ of the defendant some two years and it is apparent that the defendant did not intend to employ her for merely a month. The fact that she was to be paid on a monthly basis does not alter the fact that she was employed for an indefinite period to be terminated at the will of the parties. Secretaries are usually employed in such a manner because, except in unusual cases, no one would employ a secretary for only a month. The privilege becomes effective at the time of the employment and continues throughout it to secure the payment of the wages, whether due or to become due, to the limited extent of the salary due for the previous year and the current year as set forth in Article 3214, R.C.C.” (Emphasis supplied.)
We hold intervenor’s claim fof wages is privileged and that his employment contract was continuous. The privilege accorded by LSA-C.C. arts. 3191 and 3214 became effective from the date of Eight’s employment in June, 1958, and continued throughout his employment which lasted to March 14, 1961. The chattel mortgage herein involved was not in effect prior to November 4, 1960, and, therefore, the judgment correctly determined intervenor’s privilege as having priority over that arising from the chattel mortgage.
Appellant seriously urges that intervenor may not sue upon the indebtedness represented by the six checks which he negotiated. It argues that he has already received payment in full and that he is no longer the holder of the checks. The answer to counsel’s contention requires a determination as to whether novation has taken place. If novation has occurred, the obligation of Terzia Lumber & Hardware, Inc. to intervenor for the payment of wages has been extinguished. LSA-C.C. art. 2189 provides:
“Novation takes place in three ways:
“1. When a debtor contracts a new debt to his creditor, which new debt is substituted to the old one, which is extinguished.
“2. When a new debtor is substituted to the old one, who is discharged by the creditor.
“3. When by the effect of a new engagement, a new creditor is substituted to the old one, with regard to whom the debtor is discharged.”
In Rains v. Jones, La.App., 152 So. 356, 357 (2d Cir.1934), this court discussed novation as follows:
“Novation is never presumed. The intention to make it must clearly result from the terms of the agreement or from the acts of the parties. A change in the form of a debt does not *236 work a novation. Jordan v. Anderson, 29 La.Ann. 749; Pontchartrain Apartments v. Maryland Casualty Co., 171 La. 67, 129 So. 671.
“The mere giving of a note does not work a novation of the debt unless it is so intended, which intention may be gleaned from the acts of the parties, as well as the terms of the agreement. Amoss v. Burleson, 8 La.App. 359; Carre Company v. E. J. Stewart & Company, 166 La. 317, 117 So. 238.”
It is clear that novation did not occur when Terzia Lumber & Hardware, Inc., gave its employee a check for his wages. The check was only evidence of the amount of indebtedness. La Salle Extension University v. Thibodeaux, La.App., 155 So. 53 (1934). While Kight was still holder of the check at his option he could have sued upon either the obligation of the company to pay his wages, if it was breached, or upon the check. Boelte v. West, 185 So. 471, 472 (Orl.App.1939).
Nor did novation take place when Kight negotiated the checks into the hands of other holders. The intention to novate does not “clearly result from the terms of the agreement or from the acts of the parties.” The obligation of the company to pay its employee his wages was not extinguished and Kight' had the right to sue upon that obligation unless prevented from doing so by our Negotiable Instruments Law, LSA-R.S. 7:1 et seq.
We are cognizant of the rule, accepted in some states, that:
“The payee of a note cannot recover on the -original consideration, unless he produces and surrenders, or offers to surrender, the note or presents an adequate excuse for its nonproduction.” 10 C.J.S. Bills and Notes § 528, p. 1160.
The reason for the rule is not that the debt has been paid, but that a suit might afterward be brought hy the endorsee and so the party might be compelled to pay the debt a second time. 21 Ruling Case Law 59. The rule is also stated in 85 A.L.R. 1057, as an annotation to the case of Advance-Rumely Thresher Co. v. Rudolph Kruger et al., 93 Mont. 66, 16 P.2d 1102, 1104 (1932). The Montana Supreme Court stated in this case:
“When a check is received as conditional payment, and the check is dishonored, recovery cannot be had upon the original debt without accounting for the check (except, possibly, where the maker is insolvent).”
In the present case Terzia Lumber & Hardware, Inc., as maker, and Kight, as endorser, are clearly liable in solido to all the holders of the negotiated checks, including those which have not yet been sued upon. Kight testified that the reason he had not reimbursed the holders and re-acquired possession of the checks was that he did not have the funds to do so. If Kight were paid his wages from the proceeds of the chattel mortgage sale, Terzia Lumber & Hardware, Inc., would be relieved of its obligation to him. As Terzia Lumber & Hardware, Inc., is out of business and obviously is insolvent, Kight would be obliged, as endorser of the checks, to pay the holders in turn. There is little or no possibility that defendant, Terzia Lumber & Hardware, Inc. might be compelled to pay the debt twice. In any event, only defendant may complaint of double payment.
Appellant appears not to contest the right of intervenor to claim payment for wages except that part evidenced by the checks which were negotiated. Intervenor is, therefore, also entitled to relief as prayed for as to the two unsigned checks.
For the reasons assigned, we hold that the judgment from which appealed is correct, and it is hereby affirmed at appellant’s cost.