295 So.2d 18 (1974)
EXCHANGE NATIONAL BANK OF CHICAGO
v.
Frank SPALITTA et al.
No. 6201.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 1974.
Rehearing Denied June 6, 1974.
Writ Granted August 30, 1974.
*19 Roos & Roos, Leo S. Roos, New Orleans, for plaintiff-appellant.
Henican, James & Cleveland, C. Ellis Henican, Jr., Carl W. Cleveland, New Orleans, for defendants-appellees.
Before SAMUEL, GULOTTA and BOUTALL, JJ.
GULOTTA, Judge.
This is a suit for a deficiency judgment against accommodation guarantors in the sum of $1,376,113.00,[1] including the unpaid balance, attorney fees, interest and costs on a loan made to Place Vendome Corporation, a subsidiary of Southern Land Title Corporation, in the total amount of $1,007,890.50. Negotiations for the loans were made by National American Bank. Plaintiff advanced a greater part of the sum loaned by the National American Bank and thereby participated in making the loan.[2]
Plaintiff alleged the indebtedness is represented by two hand notes and a collateral mortgage and collateral mortgage note dated February 21, 1966. Real property in the French Quarter area in New Orleans belonging to the debtor secured the payment of the loan. The debtor defaulted. Subsequently, Place Vendome was placed in bankruptcy with its parent corporation, Southern Land Title Corporation. The real property was sold at public auction in the bankruptcy proceedings pursuant to and in accordance with an order of the Federal District Court for the sum of $255,000.00. The property was purchased by the plaintiff herein. This suit was brought seeking a deficiency judgment for the unsatisfied part of the loan and is directed against the defendants as guarantors of the notes and as continuing guarantors of the indebtedness of the Place Vendome Corporation.[3]
The trial judge, in dismissing plaintiff's suit, maintained exceptions of no cause and of no right of action. In written reasons, the judge stated the requirements of the Louisiana Deficiency Judgment Act were not met because of lack of notice of seizure on defendants and because of lack of notice for the appointment of appraisers. Accordingly, he reasoned, plaintiff is not entitled to a deficiency judgment. Plaintiff appeals. We affirm.
Plaintiff, in seeking reversal, contends
(1) The Deficiency Judgment Act is not applicable to a separate contract of continuing guarantee, that the act is applicable to a principal obligor but not to guarantors, as in the instant case;
(2) The sale was ordered in the bankruptcy reorganization by the United States *20 District Court and under such circumstances, neither the Louisiana Deficiency Judgment Act nor the Louisiana law on executory process is applicable.
Plaintiff claims defendants voluntarily surrendered the property to the bankruptcy court for adjudication and they cannot now be heard to complain that the bankruptcy sale was not in compliance with the Louisiana Act. Furthermore, plaintiff argues if the Louisiana Deficiency Judgment Act were applicable, there would be no uniformity of bankruptcy proceedings. Plaintiff further points out that it did not provoke the sale and had no control over the proceedings in the United States District Court. Exchange further argues the sale was ordered subject only to a minimum bid of 75 percent of the appraised value, thus giving more protection to the debtor than the Louisiana act which stipulates that no sale can be made for less than two-thirds of the appraised value.[4]
Defendants, on the other hand, claim the Deficiency Judgment Act is applicable to guarantors and endorsers as well as to principal obligors. They further argue the sale was provoked by the creditors in the bankruptcy proceedings under conditions set forth in the bank's petition for the sale and that the trustee's petition was withdrawn in favor of the plaintiff's petition. Accordingly, they insist plaintiff erred in not setting conditions for the sale in compliance with the Louisiana Act. Defendants finally insist that the Louisiana Deficiency Judgment Act is applicable to sales in bankruptcy and that there was failure of compliance with the Act. Specifically, defendants claim no notice of seizure was served on them;[5] no notice was given to the debtors to appoint an appraiser;[6] no appraiser was, in fact, appointed by the debtor; no oath was filed by the appraiser appointed by the court;[7] and finally, no *21 appraisal was delivered to the United States Marshall before the sale. Accordingly, defendants claim the sale was made without benefit of a valid appraisal. Defendants insist, therefore, plaintiff is not entitled to a deficiency judgment. Defendants rely on LSA-R.S. 13:4106 and LSA-R.S. 13:4107.[8]

Applicability of Louisiana Act to Guarantor
We reject plaintiff's argument that the Deficiency Judgment Act is applicable only to principal obligors and not to endorsers and guarantors. The court in Simmons v. Clark, 64 So.2d 520 (La.App. 1st Cir. 1953), when confronted with the question, where the guarantor executed a note and mortgage as collateral for the principal indebtedness (similar to the instant case), concluded since a deficiency judgment could not be obtained against the principal obligor, no such judgment could be obtained against the guarantor. In that case, the sale was made without benefit of appraisal. The court in applying the articles of the Civil Code on suretyship[9] stated at page 523:
"* * * Under the laws of suretyship, the surety here may interpose the same defense which is available to the principal debtor, as there are no personal defenses present. Furthermore, by the provisions of Article 3061 of the LSA-Civil Code, the surety is discharged from his obligation when, by the act of the creditor, the subrogation to his rights, mortgages and privileges can no longer be operated in favor of the surety."
The court went on to say also at page 523:
"* * * Under the laws of suretyship this defense of the principal obligor now operates in favor of the sureties. * * *"
See also C. I. T. Corporation v. Rosenstock, 205 So.2d 81 (La.App. 4th Cir. 1967).
It is clear under the Simmons case, therefore, that the Deficiency Judgment Act applies not only to the principal obligor but to the guarantor when the defense *22 interposed by the principal obligor is not personal to the debtor.[10]

Plaintiff Provoked Sale and Set Conditions
We reject also plaintiff's suggestion that the creditor cannot be bound by the provisions of the Louisiana Act when the debtor voluntarily surrendered the immovable property to the bankruptcy court for adjudication and that it (the creditor) had no control over the proceedings in the United States District Court. It is true, as contended by plaintiff, that the trustee petitioned the court in the bankruptcy proceeding to sell the property. However, plaintiff also petitioned for the sale of the property in the bankruptcy proceedings and in that petition set forth the conditions for the sale. At a hearing before the Referee in Bankruptcy on the petition of the trustee and the petition of plaintiff to sell the property, the attorney for the trustee stated:
"The trustee now feels, and for the reasons particularly stated in both the banks' petition, that this is the most expeditious manner of disposing of these properties, and particularly for the reasons stated in said petition, has no objection to the property being disposed of in that manner, and will make the trustee available for questioning. Perhaps since the banks are now the moving parties, they should proceed. The trustee would actually formally withdraw his petition for sale, and in lieu thereof we will have the petition of the banks requesting that this sale be made." (emphasis ours)
By order of the United States District Court, dated July 18, 1969, the property was ordered sold under substantially the same conditions set forth in plaintiff's petition for sale filed in the bankruptcy proceedings. The property was adjudicated by the public auction on September 4, 1969 for the sum of $255,000.00 to the National American Bank, the highest bidder, one of the creditors along with the plaintiff.[11] Exchange National Bank cannot now be heard that it did not provoke the sale nor control the conduct of the proceedings before the United States District Court. Exchange provoked the sale and set forth in their petition conditions of the sale which were subsequently substantially followed by the federal court. See Universal C. I. T. Credit Corporation v. Hulett, 151 So.2d 705 (La.App.3rd Cir. 1963), where the court stated at page 707:
"* * * Under the stringent policy provisions of the Deficiency Judgment Act as interpreted, a mortgage creditor is absolutely barred from a deficiency judgment where he provokes a sale, judicial or private, without the benefit of appraisement. * * *"

Noncompliance with Louisiana Deficiency Judgment Act
We now turn to a consideration of whether there was compliance with the Deficiency Judgment Act. The trial judge correctly observed in written reasons when he stated:
"It appears evident that Exchange National Bank did not comply with the Louisiana Deficiency Judgment Act, particularly with regard to the service of notice of seizure and notice for the appointment of two appraisers."
There is no evidence that service of a notice of seizure was effected or that *23 notice to the debtor for the appointment of an appraiser was given or that an oath of the appraiser was filed as required in a judicial sale under LSA-R.S. 13:4363 and LSA-R.S. 13:4365. In such instances, when the requirements for a judicial sale are not met, a creditor cannot avail himself of the benefit of a deficiency judgment under LSA-R.S. 13:4106 and LSA-R.S. 13:4107,[12] the Deficiency Judgment Act.
In Margolis v. Allen Mortgage & Loan Corporation, 268 So.2d 714 (La.App. 4th Cir. 1972), involving executory process, we stated that this is a harsh procedure and unless the deficiency judgment statutes are strictly followed in every particular, the creditor is not entitled to a deficiency judgment. While we are not concerned here with executory process, nevertheless, whether it be a sale under executory process or a judicial sale under different circumstances the requirements of the deficiency judgment act must be stringently followed before one may avail himself of its provisions.
The court in Bourgeois v. Sazdoff, 209 So.2d 320 (La.App. 4th Cir. 1968) held that a deficiency judgment could not be obtained because of the defective oath of one of two appraisers.
It is clear, therefore, that there was failure of compliance with the Deficiency Judgment Act in the instant case.

Louisiana Act is Applicable to Sale in Bankruptcy
However, plaintiff argues that the act is not applicable to judicial sales resulting from bankruptcy proceedings. In support of this argument, it cites J. Ray McDermott & Co., Inc. v. Vessel Morning Star, 457 F.2d 815 (5th Cir. 1972), where the court held that the creditor (shipbuilder) was entitled to a deficiency judgment when the foreclosure and sale is brought under the Ship Mortgage Act of 1920[13] without the necessity of compliance with a state deficiency judgment law. The result in that case, however, is not persuasive here. In the McDermott case, supra, the court was concerned with a mortgage executed in accordance with a federal act passed for the purpose of encouraging the development of the American Merchant Marine. In the instant case, we are concerned with rights of a creditor, debtor and guarantor conferred under Louisiana Statutes involving immovable property located in Louisiana. It is more reasonable that Louisiana law be applied and followed in such instances. We are more persuaded by the Court's decision in Bowl-Opp, Inc. v. Larson, D.C., 334 F.Supp. 222 (1971), where the court held that an order for the sale of mortgaged realty by the federal court in a bankruptcy proceeding did not prevent the application of Louisiana statutes which prohibits a deficiency judgment if the sale of mortgaged property is made without appraisement. In that case, the court rejected the contention made by the mortgage holder, that because a stipulation was entered into between the creditor and the trustee, (1) to disclaim the property and to allow the property to be sold under conditions to be set by a special master, (2) and to release the bankrupt from liability for debt, the Louisiana Deficiency Judgment Act was not applicable to the endorser because the creditor did not provoke the sale. In Bowl-Opp, as in the instant case, the creditor had petitioned the court to disclaim the property from the reorganization proceeding.
The stipulation in Bowl-Opp released the makers of the note from a deficiency judgment; nevertheless, all rights were reserved to the creditors to pursue any rights that they may have against the endorsers. In Bowl-Opp, the deficiency judgment was sought against the endorsers as in the instant case, and the sale was also made without the benefit of appraisement. We are in agreement with the result reached in the Bowl-Opp case. See also Wilton Maxfield Management Co. v. Crawford, 117 F.2d *24 913 (9th Cir. 1941), where the court held that a deficiency judgment could not be obtained by mortgage creditors after sale in bankruptcy when there was failure of compliance with the requirement of a California Statute relating to deficiency judgments.
We hold, therefore, that the Louisiana Deficiency Judgment Act is applicable to guarantors where property is sold at a public sale by order of the bankruptcy court where the sale is provoked by the mortgage holder and where the defense interposed by the principal obligor is not personal to him.[14] In such instances, the mortgage creditor cannot obtain a deficiency judgment against the guarantors where there is failure of compliance with the Louisiana Deficiency Judgment Act. Because of failure of compliance by Exchange, it is not entitled to obtain a deficiency judgment against the defendants. Accordingly, the judgment is affirmed.
Affirmed.
NOTES
[1] Second Supplemental Petition increases the amount to $1,458,557.84.
[2] Suit was orginally instituted by National American Bank; however, this suit was subsequently voluntarily dismissed with prejudice on December 7, 1972.
[3] Defendants executed a continuing guarantee in favor of plaintiff bank up to the sum of $1,824,234.00 in consideration of the credit extended to Place Vendome Corporation.
[4] LSA-C.C.P. art. 2336 reads as follows:

"The property shall not be sold if the price bid by the highest bidder is less than two-thirds of the appraised value. In that event, the sheriff shall re-advertise the sale of the property in the same manner as for an original sale, and the same delay must elapse. At the second offering, the property shall be sold for cash for whatever it will bring, except as provided in Article 2337."
[5] LSA-C.C.P. art. 2721 reads as follows:

"The sheriff shall seize the property affected by the mortgage or privilege immediately upon receiving the writ of seizure and sale, but not before the expiration of the delay allowed for payment in the demand required by Article 2639, unless this demand has been waived.
"The sheriff shall serve upon the defendant a written notice of the seizure of the property."
LSA-C.C.P. art. 2293 reads as follows:
"After the seizure of property, the sheriff shall serve promptly upon the judgment debtor a written notice of the seizure and a list of the property seized, in the manner provided for service of citation."
LSA-C.C.P. art. 2331 reads as follows:
"Notice of the sale of property under a writ of fieri facias shall be published at least once for movable property, and at least twice for immovable property, in the manner provided by law. The court may order additional publications.
"The sheriff shall not order the advertisement of the sale of the property seized until three days, exclusive of holidays, have elapsed after service on the judgment debtor of the notice of seizure, as provided in Article 2293."
[6] LSA-R.S. 13:4363 reads as follows:

"A. Not less than three days, exclusive of holidays, before the sale of seized property, the sheriff shall serve a written notice on the debtor and on the seizing creditor, in the manner provided for the service of a citation, directing each to name an appraiser to value the property and to notify the sheriff of his appointment prior to the time stated in the notice, which shall be at least twenty-four hours prior to the time of the sale.
"B. If there are two or more debtors or seizing creditors and these parties cannot agree as to which should act as or appoint an appraiser, and in any case where an appraisal is required prior to the judicial sale and which is not otherwise provided for in this Section, on the ex parte application of the sheriff or of any interested party, the court shall designate the party to act as or appoint the appraiser, and the notice required by Sub-section A of this Section shall be served on the party so designated."
[7] LSA-R.S. 13:4365 reads as follows:

"The appraiser shall take an oath to make a a true and just appraisement of the property. "If the appraisers cannot agree, the sheriff shall appoint a third appraiser, who shall also be sworn, and whose decision shall be final. "The property seized must be appraised with such minuteness that it can be sold together or separately.
"The appraisers shall reduce their appraisement to writing, sign it, and deliver it to the sheriff."
[8] LSA-R.S. 13:4106 reads as follows:

"If a mortgagee or other creditor takes advantage of a waiver of appraisement of his property, movable, immovable, or both, by a debtor, and the proceeds of the judicial sale thereof are insufficient to satisfy the debt for which the property was sold, the debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor. The mortgagee or other creditor shall not have a right thereafter to proceed against the debtor or any of his other property for such deficiency, except as provided in the next paragraph.
"If a mortgage or pledge affects two or more properties, movable, immovable, or both, the judicial sale of any property so affected without appraisement shall not prevent the enforcement of the mortgage or pledge in rem against any other property affected thereby."
LSA-R.S. 13:4107 reads as follows:
"R.S. 13:4106 declares a public policy and the provisions thereof can not, and shall not be waived by a debtor, but it shall only apply to mortgages, contracts, debts or other obligations made, or arising on or after August 1, 1934."
[9] LSA-C.C. art. 3035 reads as follows:

"Suretyship is an accessory promise by which a person binds himself for another already bound, and agrees with the creditor to satisfy the obligation, if the debtor does not."
LSA-C.C. art. 3059 reads as follows:
"The obligation which results from a suretyship, is extinguished by all the different modes in which other obligations may be extinguished; but the confusion which results in case the principal debtor or his surety should become heirs one to the other does not extinguish the action of the creditor against the person who has become the surety of the surety."
LSA-C.C. art. 3060 reads as follows:
"The surety may oppose to the creditor all the exceptions belonging to the principal debtor, and which are inherent to the debt; but he can not oppose exceptions which are personal to the debtor."
LSA-C.C. art. 3061 reads as follows:
"The surety is discharged when by the act of the creditor, the subrogation to his rights, mortgages and privileges can no longer be operated in favor of the surety."
[10] In the Simmons case, the personal defenses are defined as infancy, interdiction, coverture, lunacy, bankruptcy and the like. While bankruptcy is listed here, the personal defense referred to in Simmons is the discharge from indebtedness which is a personal benefit to the bankrupt. This personal defense, i. e., the discharge in bankruptcy to the debtor, is one which would not relieve the surety. The surety here does not urge the discharge in bankruptcy of the debtor as the basis for his release. The reason in this instant case is the making of a judicial sale without compliance with the Deficiency Judgment Act.
[11] The sale was made in compliance with the United States District Court order. The court stated the sale must be for not less than 75 percent of appraisal. Court appointed appraisal was $333,120.00. Sale price was in excess of 76 percent.
[12] See Footnote 8, supra, for wording of these provisions.
[13] 46 U.S.C.A. § 911 et seq.
[14] See footnote 10, supra.