399 So.2d 1285 (1981)
GENERAL MOTORS ACCEPTANCE CORPORATION
v.
Allen P. SMITH.
No. 11945.
Court of Appeal of Louisiana, Fourth Circuit.
June 2, 1981.
*1286 Tucker & Schonekas, Arthur S. Mann, III, New Orleans, for plaintiff-appellee.
John L. Dorsey, New Orleans, for defendant-appellant.
Before REDMANN, SCHOTT and KLIEBERT, JJ.
REDMANN, Judge.
Louisiana's statutory "public policy," that "can not, and shall not be waived by a debtor," La.R.S. 13:4107, is that a debt "shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor," R.S. 13:4106, whenever the creditor sells the debtor's property other than by judicial sale with appraisement.[1]
The question on this appeal is whether that policy, which expressly prohibits a judgment against the debtor for the balance of the debt allegedly remaining after crediting some amount as proceeds of the unappraised sale, also prohibits such a deficiency judgment against the debtor's surety, notwithstanding the surety's contractual stipulation that his liability "shall not be affected ... by the discharge or release of the [principal debtor] ..., by operation of law or otherwise." We answer that it does and we therefore reverse a judgment for the creditor against the surety.
*1287 The statute as originally enacted in 1934 provided for full discharge of the debt by unappraised sale, and later amendments indicate no legislative intent to depart from that scheme except to preserve in rem liability as to other properly included in the pledge or mortgage.[2] The logic of the full discharge is simple: because sales without appraisal often produce an unfair price (often with the creditor as the buyer), that price should not be treated as the equivalent of a price produced by a sale with appraisal, which must bring two-thirds of the appraised value or be readvertised; see Louisiana Nat. Bank v. Heroman, La.App. 1 Cir. 1973, 280 So.2d 362, writ refused 281 So.2d 755. The unappraised sale thus having no price providing an acceptable measure for deduction from the debt, the legislature has taken the position that an unappraised sale will be treated as if its proceeds were sufficient to pay off the debt entirely, save, since, the 1952 amendment, the in rem liability of other pledged or mortgaged property.
The public policy of R.S. 13:4106 is so strong and unwaivable that it prevents even a judgment by default for the "deficiency" in the absence of allegation and proof of sale with appraisal, Gumina v. Dupas, La.App. 4 Cir. 1964, 159 So.2d 377.
That public policy ordinarily discharges persons secondarily liable because the discharge of the person primarily liable releases one in the position of a surety, Simmons v. Clark, La.App. 1 Cir. 1953, 64 So.2d 520,[3] or an indorser, Southland Inv. Co. v. Motor Sales Co., 1941, 198 La. 1028, 5 So.2d 324, unless the secondary obligor consented to the sale without appraisement, Southland above; Farmerville Bank v. Scheen, La.App. 2 Cir. 1954, 76 So.2d 581; Commercial Cr. Eq. Corp. v. Larry Parrott of Gueydan, La.App. 3 Cir. 1968, 212 So.2d 860, writ refused 214 So.2d 719 (see also Exchange Nat. Bank v. Spalitta, La.App. 4 Cir. 1974, 295 So.2d 18, rev'd on other grounds, La.1975, 321 So.2d 338).
Plaintiff argues in our case, however, that the surety's contractual agreement was that his liability "shall not be affected" by discharge of the debtor and that therefore, as in Louisiana Bank & T. Co., Crowley v. Boutte, La.1975, 309 So.2d 274, the ordinary rule of law that the discharge of the debtor discharges the sureties, C.C. 2205, does not apply.
Our surety, unlike the sureties in Boutte, is not bound in solido with the debtor,[4] but we will accept plaintiff's argument that *1288 Boutte might imply enforceability of his agreement that his liability is to be unaffected by discharge of the debtor. Yet plaintiff's argument concedes that Boutte, 309 So.2d at 278, n. 7, preserves the surety's personal right to reimbursement from the debtor (apart from simple subrogation to the creditor's now-extinguished right). The consequence would thus be that the principal debtor would be liable to the surety if the creditor obtains a judgment against the surety.
That consequence is inconsistent with R.S. 13:4106 and -7. The debtor cannot himself waive the public policy of § 4106, and a surety cannot be allowed to waive it for the debtor, and the creditor cannot be allowed to defeat that public policy by the simple device of obliging the debtor to provide a surety who can then collect from the debtor. The provision of the surety's contract making his liability unaffected by the discharge of the debtor is inconsistent with the unwaivable public policy of R.S. 13:4106 and is therefore unenforceable. We therefore reverse the judgment appealed from.
Finally we note that C.I.T. Corp. v. Rosenstock, La.App. 4 Cir. 1967, 205 So.2d 81, involved an agreement similar to ours.[5] The opinion does not say whether or not the judicial sale of the mortgaged property was with appraisement, but it relied on Wilson v. Brian, La.App. 2 Cir. 1955, 81 So.2d 142, and Simmons, above, in each of which sale was without appraisement. Rosenstock reasoned that the mere sale of mortgaged property by the creditor released the surety under C.C. 3061.[6] C.C. 3061, however, has long been held to discharge a surety only to the extent he or she is injured by the creditor's act; Provan v. Percy, 1856, 11 La.Ann. 179; Pontchartrain Apts. v. Maryland Cas. Co., 1930, 171 La. 67, 129 So. 671. We therefore prefer to rely on R.S. 13:4106 and -7 as the basis of our judgment.
Reversed; suit dismissed at plaintiff's cost.
NOTES
[1] R.S. 13:4106. If a mortgagee or other creditor takes advantage of a waiver of appraisement of his property, movable, immovable, or both, by a debtor, and the proceeds of the judicial sale thereof are insufficient to satisfy the debt for which the property was sold, the debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor. The mortgagee or other creditor shall not have a right thereafter to proceed against the debtor or any of his other property for such deficiency, except as provided in the next paragraph.

If a mortgagee or pledge affects two or more properties, movable, immovable, or both, the judicial sale of any property so affected without appraisement shall not prevent the enforcement of the mortgage or pledge in rem against any other property affected thereby.
R.S. 13:4107. R.S. 13:4106 declares a public policy and the provisions thereof can not, and shall not be waived by a debtor, but it shall only apply to mortgages, contracts, debts or other obligations made, or arising on or after August 1, 1934.
[2] At the time of its enactment in 1934 and incorporation into the Revised Statutes of 1950, the statute did not merely create a procedural bar: it decreed the debt "fully satisfied and discharged, and such ... creditor shall not thereafter have the right to proceed against the debtor or any other of his property for such deficiency, in any manner whatsoever." La. Acts 1952 No. 20 amended the statute to qualify "fully satisfied and discharged" by "insofar as said debt constitutes a personal obligation against the debtor or debtors" and also limited the proscription against proceeding for the deficiency by adding a proviso that, notwithstanding a sale without appraisement, the creditor could proceed in rem against other property included in the mortgage or pledge.

The purpose of the 1952 amendment was to allow execution on two or more things pledged or mortgaged to secure a debt, and for that purpose it was appropriate to describe the discharge of the debt as a discharge of the "personal obligation against the debtor." In the light of that purpose of the amendment, however, there is no reason to infer from the cited words an intent to limit the discharge of the debt to the principal debtor alone and to deny discharge to sureties or other persons secondarily liable.
(A later amendment by Acts 1960 No. 32 merely edited the 1952 text into two paragraphs, without changing its substance.)
[3] The persons treated as sureties were in fact the comakers of a collateral mortgage note (secured by mortgage on their own property), and the collateral mortgage note was pledged to secure the principal debtor's note (also secured by mortgage on his own property, which was sold without appraisement).
[4] Query: if he were, would he not be directly discharged as a codebtor? But the agreement does not make him liable in solido; its full text reads:

In consideration of the making of the within contract by the seller therein, the undersigned does hereby guarantee to said seller, or any assignee of said contract, payment of all deferred payments as specified therein and covenants in default of payment of any instalment or performance of any requirement thereof by buyer to pay full amount remaining unpaid upon demand. The liability of the undersigned shall not be affected by any settlement, extensions, variation of terms of the within contract effected with, or by the discharge or release of the obligation of the buyer or any other person interested, by operation of law or otherwise. Notice of acceptance of this guaranty, notices of non-payment and non-performance, notices of amount of indebtedness outstanding at any time, protests, demands, and prosecution of collection, foreclosure and possessory remedies, and the right to remove any legal action from the court originally acquiring jurisdiction, are hereby waived.
[5] The indorser "consent[s] that the holders may, ... without releasing the liability of [the indorser], ... release, by operation of law or otherwise, any rights against ... the maker...." 205 So.2d at 82.
[6] The surety is discharged when by the act of the creditor, the subrogation to his rights, mortgages and privileges can no longer be operated in favor of the surety.