465 So.2d 874 (1985)
FIRST NATIONAL BANK OF WEST MONROE, Plaintiff-Appellant,
v.
James Dewitt PICKENS, et al., Defendants-Appellee-Appellants.
No. 16790-CA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 1985.
*875 McLeod, Swearingen, Verlander & Dollar by David E. Verlander, III, P.C., Monroe, for plaintiff-appellant.
Hudson, Potts & Bernstein by W. Craig Henry, Monroe, for defendant-appellee, James DeWitt Pickens and defendants-appellants, Pickens M. Kaplan & Son, Inc., Pickens Steel Buildings, Inc., and Pico Steel, Inc.
Before HALL and SEXTON, JJ., and PRICE, J. Pro Tem.
SEXTON, Judge.
In this action for a deficiency judgment, plaintiff Bank appeals that portion of the judgment rejecting its claim against James Dewitt Pickens, personally and as endorser and guarantor of certain corporate notes. The corporate defendants appeal that portion of the judgment granting judgment against them for the deficiency on the corporate notes. We affirm.
The facts of this matter, while complicated, are largely undisputed. On December 19, 1980, First National Bank of West Monroe (hereinafter referred to as "Bank") filed a petition to collect sums of money owed to it on thirty promissory notes which were executed during the years 1973 through 1977. The notes in question were made variously by James Dewitt Pickens personally, and by corporations of which Pickens was the sole shareholder: Pickens M. Kaplan & Son, Inc., Pickens Steel Buildings, Inc., and Pico Steel, Inc. The corporate notes of Pickens M. Kaplan & Son, Inc. and Pickens Steel Buildings, Inc. were secured by collateral chattel mortgages on the corporate inventory and equipment. The corporate accounts receivable of Pico Steel, Inc. were assigned to the Bank. Mr. Pickens personally endorsed all but one of the corporate notes. The Bank also asserts that Mr. Pickens executed a personal guaranty of the corporate debts, which was secured by mortgages on three tracts of real estate owned by Mr. Pickens, and which tracts shall hereinafter be referred to as Arkansas Road, Dumas Road, and North 7th Street. This guaranty agreement, *876 which is not contained in the record, was stipulated to by all parties.
In addition to the corporate notes, the Bank sought to collect on three personal notes of which Pickens was the maker. As we appreciate the evidence, these notes were also secured by the mortgaged real estate.
In the year 1977, and into early 1978, Mr. Pickens' corporations and Mr. Pickens himself were in serious financial trouble. They were all in default of their loans to the Bank and were unable to make the notes current. Therefore, the Bank advised Mr. Pickens and his corporations that it intended to call all of these notes and foreclose, and to then look to Mr. Pickens for payment as endorser and guarantor on each corporate note.
In order to delay foreclosure, Mr. Pickens entered into an arrangement whereby the chattel mortgaged corporate property belonging to Pickens M. Kaplan & Son, Inc. and Pickens Steel Buildings, Inc. would be sold in an advertised public auction by a professional auctioneer, with the net proceeds to be applied to the debts.
The auction of the movable property took place on August 10, 1977. The sale was advertised, and was conducted by Keith Babb, a professional auctioneer. The total sale proceeds were $32,738.50. After deducting $1,810.00 for property belonging to Mr. Pickens personally and not mortgaged to the Bank, $790 in advertising costs, and $3,092.85 for the auctioneer's commission, the net proceeds of $27,045.65 were paid to the Bank and credited to the account of Pickens M. Kaplan & Son, Inc.
Additionally, the parties agreed that two tracts of immovable property mortgaged to secure Pickens' guaranty of all indebtedness owed the Bank by Pickens and his corporations, the Dumas Road and North 7th Street tracts, would be transferred to the Bank. The transfer of this property occurred on February 3, 1978. The deed recites that the parties desired to effect a voluntary conveyance of the property to the Bank "without incurring the expense of foreclosure proceedings at evaluations determined by an independent appraiser acceptable to both parties in order that PICKENS may receive credit against his indebtedness to the BANK for the full appraised value of said properties without deduction for the costs, fees and other expenses which would be involved in said foreclosure proceeding." The document states that it is not to be considered a dation en paiement but is a present sale of the property. The deed further states that the net appraised value of the properties, $45,000.00 for the North 7th Street, and $77,749.54 for the Dumas Street, for a total of $122,749.54, was credited to Pickens' indebtedness to the Bank. The payment summary sheets for the corporations and Pickens personally reflect that $122,749.54 was credited to the account of Pickens M. Kaplan & Son, Inc. on February 6, 1978, "as per agreement for transfer of property."
At the same time as the transfer of the property, the parties executed an unrecorded addendum to the act of conveyance. In this document, the parties recognized that Pickens was of the opinion that the properties had a fair market value in excess of the net appraised value, and was of the opinion that a qualified and reputable real estate appraiser would place a value of $60,000 on the North 7th Street property and $126,249.54 on the Dumas Street property for a total value of $186,249.54. Therefore, the parties agreed, so that the property could be transferred immediately, that credit for Pickens' estimated values would be immediately applied to his indebtedness, with the proviso that if Pickens failed to supply a detailed appraisal comporting with his figures within ninety days, then the credit on his indebtedness would be retroactively reduced to the sum of $45,000 on the North 7th Street property and $77,749.54 on the Dumas Street property for a total credit of $122,749.54. Also in this addendum, the Bank agreed to forego suit against Pickens and the various corporations for one year, and Pickens agreed to make reasonable efforts to liquidate the indebtedness to the Bank. The Bank further agreed that if it were to sell either of *877 the properties for a net sales price in excess of the credit given Pickens, credit for the difference would be given to Pickens.
In connection with this agreement, Pickens introduced an offer to the Bank to buy the North 7th Street property for $80,000, which offer was rejected by the Bank.
Also on February 3, 1978, Pickens sold the Arkansas Road property to Guy Antley for $60,000. A corresponding reduction of $60,000 "as per agreement for transfer of property" is reflected on the payment summary sheet for Pickens M. Kaplan & Son, Inc. The record in this matter does not disclose an appraisal of this property.
Pico Steel, Inc. was created to complete the contracts of the other corporations which they were unable to perform after the auction. Pico's accounts receivable were assigned to the Bank. All loans made by Pico from the Bank post date the auction of the movable property belonging to Pickens M. Kaplan & Son, Inc. and Pickens Steel Buildings. Pico owned no equipment or machinery, but obtained loans to pay for labor and lease of equipment necessary to complete the contracts of the other corporations.
The Bank subsequently instituted suit for the deficiency remaining on all notes. The defendants filed an exception of prematurity, which was denied, and a motion for summary judgment, which was also denied.
The defendants' basic contention at trial was that the Bank was precluded from obtaining a deficiency judgment by LSA-R.S. 13:4106, the Deficiency Judgment Act, because of the transfers by private sale of property which was mortgaged to secure the corporate debts and Mr. Pickens' personal guaranty.
Following a trial, the trial court held that the Deficiency Judgment Act did not apply to protect either the corporate defendants or Mr. Pickens individually with regard to the sale of movable property belonging to the corporations. Although a judicial sale of that property had not been conducted, the court indicated that because all defendants agreed to a private sale and actively participated in the liquidation of the corporate movable assets, they were precluded from claiming the benefits of the Deficiency Judgment Act.
However, the court noted that a more substantial question was presented by the conveyance of the two tracts of real estate owned by Mr. Pickens to the Bank and another tract, also belonging to Pickens, to a third party. The court held that Mr. Pickens did not actively participate in those transfers, therefore, he could enjoy the protection of the Deficiency Judgment Act. However, the court further held that the Deficiency Judgment Act did not extend to protect the corporate defendants, and therefore a judgment was granted against them and in favor of the Bank for all deficient amounts owed on the promissory notes.
The plaintiff Bank subsequently appealed that portion of the judgment denying its claims against defendant Pickens. The defendants filed an answer to the appeal, attacking that portion of the judgment granting the plaintiff Bank's claims against the corporate defendants for all deficient amounts.

The Liability for Deficiency Of Pickens M. Kaplan & Son, Inc. and Pickens Steel Buildings, Inc. Resulting from Sale of Chattels
As previously noted, the equipment and machinery belonging to Pickens M. Kaplan & Son, Inc. and Pickens Steel Buildings, Inc. were liquidated by private auction on August 10, 1977, and that corporation's account with the Bank was credited with the proceeds of the sale. The parties stipulated that the movables were not appraised.
Defendants contend that since the sale of property was by private and not judicial sale, the Bank is barred from recovering from them the deficiency on the corporate notes.
Louisiana's Deficiency Judgment Act is embodied in LSA-R.S. 13:4106 and 13:4107, which provide:
*878 § 4106. Deficiency judgment prohibited if sale made without appraisement
If a mortgagee or other creditor takes advantage of a waiver of appraisement of his property, movable, immovable, or both, by a debtor, and the proceeds of the judicial sale thereof are insufficient to satisfy the debt for which the property was sold, the debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor. The mortgagee or other creditor shall not have a right thereafter to proceed against the debtor or any of his other property for such deficiency, except as provided in the next paragraph.
If a mortgage or pledge affects two or more properties, movable, immovable, or both, the judicial sale of any property so affected without appraisement shall not prevent the enforcement of the mortgage or pledge in rem against any other property affected thereby.
§ 4107. R.S. 13:4106 cannot be waived; operation prospective
R.S. 13:4106 declares a public policy and the provisions thereof can not, and shall not be waived by a debtor, but it shall only apply to mortgages, contracts, debts or other obligations made, or arising on or after August 1, 1934.
The jurisprudence has reinforced the statement of public policy expressed in R.S. 13:4107 and has held that in the absence of strict statutory compliance, an action for deficiency is barred. See generally, Ford Motor Credit Company v. Samec, 227 So.2d 164 (La.App. 2d Cir.1969); General Motors Acceptance Corporation v. Tullier, 453 So.2d 329 (La.App. 3rd Cir. 1984); Clark v. Selago Federal Credit Union, 405 So.2d 1286 (La.App. 4th Cir.1981), writ denied, 407 So.2d 749 (La.1981). Therefore, a creditor may obtain a deficiency judgment only if the property has been sold in an executory proceeding after an appraisal in accordance with law. LSA-C. C.P. Arts. 2771, 2723. No deficiency judgment can be obtained if the sale is made without appraisal. LSA-R.S. 13:4106; Credithrift of America, Inc. v. Williams, 426 So.2d 339 (La.App. 2d Cir.1983); Bank of New Orleans & Trust Co. v. Brule, 389 So.2d 1148 (La.App. 4th Cir.1980); Ford Motor Credit Company v. Soileau, 323 So.2d 221 (La.App. 3rd Cir.1975). Thus, although a sale with appraisal is not required under LSA-C.C.P. Art. 2723 when same is waived in the act evidencing the mortgage or privilege, a sale with appraisal is required in order for a creditor to obtain a deficiency judgment. Credithrift, supra.
Defendants' argument in the instant case that the deficiency is barred because of a lack of appraisal is flawed. The record before us does not disclose that the sale of the movables belonging to these corporations was an act of the Bank. There is no evidence whatsoever that the movables were ever in the possession of the Bank. In fact, the auction occurred on corporate premises and Pickens testified that the title to the equipment passed directly from the corporate seller to the purchasers at the auction. The only arguable support for defendants' position is that certain directors of the Bank apparently suggested the auctioneer. However, we conclude, after our review of this record, that the corporate debtors themselves sold the movable property, and directed the auctioneer to send the proceeds of the sale to the Bank for application to the corporate debts.
The Deficiency Judgment Act, by its own terms, only covers sale of incumbered property by the "mortgagee or other creditor." Haydel v. Clark, 347 So.2d 1200 (La.App. 1st Cir.1977), writ denied, 350 So.2d 1223 (La.1977); see also, Sterlington Bank v. Terzia Lumber & Hardware, Inc., 180 So.2d 16 (La.App. 2d Cir.1965), writ denied, 248 La. 905, 182 So.2d 660 (1966). Accordingly, the Act has no application to Pickens M. Kaplan & Son, Inc. or Pickens Steel Buildings since the mortgaged property was sold by its owner, these corporations, and not by a mortgagee or other creditor. Consequently, the plaintiff is not precluded from pursuing the deficiency on these notes of these two corporations by virtue of the provisions of the Deficiency Judgment Act.

*879 The Liability of Pickens, Individually

James D. Pickens endorsed all of the corporate notes except for one, a note made by Pickens M. Kaplan & Son in the amount of $275,000, and dated March 15, 1974. On this note, Pickens signed only in his capacity as president of the corporation. To reiterate, Pickens mortgaged the three tracts of immovable property in order to secure his endorsement and guaranty of the corporate notes, and further to secure his own personal indebtedness with the Bank. On each of the corporate notes endorsed by Pickens, he agreed to be bound in solido with the maker.[1]
The property was deeded to the Bank on February 3, 1978. The addendum to the deed recites that the transfers shall not be considered as a dation en paiement, but were intended by the parties to be considered as a present sale of the property from debtor to creditor. Thus, acknowledging the intent of the parties as embodied in the addendum, we must determine whether this private non-judicial sale or transfer, which occurred after appraisement of the property, will bar the creditor's subsequent attempt to recover a deficiency.
Specifically, the plaintiff has urged a reversal of the trial court denial of its demands against Pickens personally contending that a private sale conducted with appraisal does not preclude a deficiency judgment. We do not reach that issue. We simply hold that even if the plaintiff's contention is correct, the procedure here employed falls far short of the appraisal safeguards enacted to insure fairness in judicial sales. Assuming arguendo that a private sale with appraisal does not preclude a deficiency judgment, it certainly must comport with the minimum standards enacted to insure that judicial sales are fairly conducted. See generally, 49 Tul.L. Rev. 1094 (1975), at 1096.
LSA-C.C.P. Articles 2771 states when a creditor may obtain a deficiency judgment:
Art. 2771. When deficiency judgment obtainable
The creditor may obtain a judgment against the debtor for any deficiency due on the debt after the distribution of the proceeds of the judicial sale only if the property has been sold under the executory proceeding after appraisal in accordance with the provisions of Article 2723.
LSA-C.C.P. Art. 2723 is one of the articles regulating the sale of property under a writ of seizure and sale issued pursuant to executory process. This article provides:
Art. 2723. Appraisal of property, unless waived
Prior to the sale, the property seized must be appraised in accordance with law, unless appraisal has been waived in the act evidencing the mortgage or privilege and plaintiff has prayed that the property be sold without appraisal, and the order directing the issuance of the writ of seizure and sale has directed that the property be sold as prayed for.
LSA-R.S. 13:4363[2] through 4365 provide the rules with regard to appraisement for judicial sales:
§ 4363. Appointment of appraisers
A. Not less than three days, exclusive of holidays, before the sale of seized property, the sheriff shall serve a written notice on the debtor and on the seizing creditor, in the manner provided for the service of a citation, directing each to name an appraiser to value the property and to notify the sheriff of his appointment prior to the time stated in the notice, which shall be at least twenty-four hours prior to the time of the sale.
B. If there are two or more debtors or seizing creditors and these parties cannot agree as to which should act as or appoint an appraiser, and in any case where an appraisal is required prior to *880 the judicial sale and which is not otherwise provided for in this Section, on the ex parte application of the sheriff or of any interested party, the court shall designate the party to act as or appoint the appraiser, and the notice required by Sub-section A of this Section shall be served on the party so designated.
§ 4364. Sheriff to appoint appraiser if party does not appoint
If a party neglects to appoint an appraiser or to notify the sheriff within the time designated, the sheriff shall appoint an appraiser for him.
§ 4365. Oaths of appraisers; sheriff appoints third appraiser if two cannot agree; minute, written appraisement
The appraisers shall take an oath to make a true and just appraisement of the property.
If the appraisers cannot agree, the sheriff shall appoint a third appraiser, who shall also be sworn, and whose decision shall be final.
The property seized must be appraised with such minuteness that it can be sold together or separately.
The appraisers shall reduce their appraisement to writing, sign it, and deliver it to the sheriff.
In order to obtain a deficiency judgment, there must be substantial and adequate compliance with the rules of appraisement. Massey-Ferguson Credit Corporation v. Douglas, 448 So.2d 817 (La. App. 2d Cir.1984), writ denied, 450 So.2d 360 (La.1984); Credithrift, supra.
In this case, the property was appraised by only one appraiser, that of the Bank. Although the debtor was afforded the opportunity to appoint an appraiser for his own behalf, this right was not an unfettered one. The debtor testified that he was unable to afford the appraiser. Under the above quoted appraisal rules, he would have been entitled to an appraiser appointed on his behalf by the sheriff. If these appraisers, the Bank's appraiser and the debtor's appraiser, could not have agreed, a third appraiser would have been appointed. Furthermore, there is no evidence to show that the appraiser for the Bank took an oath to make a true and just appraisement of the property. Additionally, the Bank placed a ceiling on the amount of credit that would be given on the debts of Pickens, notwithstanding his ability to furnish an appraisal reflecting a value of a higher amount. We also note, that since this was a private sale, there was no advertisement of the property.
Although an appraisement was confected in this instance, we find that it was lacking in the procedural safeguards provided by the rules for appraisal of property for judicial sales so as to bar a subsequent attempt to recover the unsatisfied portion of the claim from this debtor. Stated differently, we conclude that in this case there was not substantial and adequate compliance with the rules of appraisement.
We believe that the fashion of the sale of the property in this instance, although the property was appraised, cannot be used to circumvent the Deficiency Judgment Act. Accordingly, we determine that the trial court's judgment barring deficiency against Pickens, an endorser and solidary obligor, and against Pickens personally, must be affirmed.

Effect of Release of Solidary Obligor
We have determined, then, that Pickens, a solidary obligor, was released by virtue of the provisions of the Deficiency Judgment Act by the private sale of his property to the creditor without adequate and substantial compliance with the rules of appraisement. We must now determine what effect if any the release of Pickens has on the obligations of the borrowing corporations.
Civil Code Article 3045 provides that when a surety binds himself in solido with the debtor, the effects of his engagement are to be regulated by the same principles which have been established for debtors in solido. Therefore, as between the creditor and the solidary surety, the obligations of *881 the surety are governed by rules of solidary obligors.
At the time of this agreement, LSA-C.C. Art. 2203[3] provided:
Art. 2203. Remission as to one codebtor in solido
Art. 2203. The remission or conventional discharge in favor of one of the codebtors in solido, discharges all the others, unless the creditor has expressly reserved his right against the latter.
In the latter case, he can not claim the debt without making a deduction of the part of him to whom he has made the remission.
In Louisiana Bank and Trust Co., Crowley v. Boutte, 309 So.2d 274 (La.1975), the Supreme Court held that the release of the principal debtor, when accompanied by a reservation of rights against other parties, does not discharge the solidary surety.
All of the notes upon which the instant suit was instituted contain the following language:
The holder hereof may at any time release any party hereto, in whole or in part, or may surrender any and all of the collateral securing this note, without in any manner affecting or impairing the rights of the holder against all other parties hereto, as well as collateral security not so released.
However, Boutte did not involve a deficiency judgment but was a suit subsequent to conventional release. In General Motors Acceptance Corporation v. Smith, 399 So.2d 1285 (La.App. 4th Cir.1981), dealing with a suit for deficiency judgment against the surety, the court held that judgment against the surety was improper if deficiency judgment was not available against the principal debtor. Note that the surety in Smith was not bound in solido.
In contrast, in the instant case, we are presented with a solidary surety against whom deficiency is unavailable because of the actions of the creditor. The surety and the principal each agreed that his liability would be unaffected by the discharge of the other. Moreover, among the co-obligors bound in solido, the legal relationships may be governed by the rules of suretyship. Boutte, supra. The borrower thus has no recourse against the surety as a result of the deficiency judgment against him as suretyship is an accessory promise. LSA-C.C. Art. 3035.
Therefore, the fact that the Bank cannot obtain a deficiency judgment against Pickens, the solidary endorser on the notes, because it participated in the sale of his property by means other than judicial sale with appraisement, affords no basis for concluding that the Bank cannot pursue a deficiency judgment against the solidary principal debtor. The statute protects the owner of mortgaged property. The corporations owned no interest in the property.
The rationale of Smith, which held that a creditor is precluded from obtaining a deficiency judgment against a non-solidary surety when it has lost its right to a deficiency judgment against the principal debtor, does not apply to the reverse situation presented here. The rationale of Smith was that to allow a deficiency judgment against the surety who in turn could recover from the discharged principal debtor would circumvent the deficiency judgment statute. That situation does not exist here for the principal debtor will have no recourse against the discharged endorser as a result of the deficiency against him.
We therefore affirm the rendition of the deficiency judgments against the corporations and thus affirm the trial court's judgment in its entirety. All costs are to be born by plaintiff-appellant.
AFFIRMED.
NOTES
[1] Each of the corporate notes containing Pickens' endorsement begin with the introductory phrase "____ days after date, we, the makers, endorsers, guarantors and sureties, and each of us in solido, promise to pay...."
[2] The statutes quoted in text appear as they existed at the time of the transfer of this property.
[3] This article was revised by Act 331 of 1984 effective January 1, 1985. The article now appears as LSA-C.C. Art. 1803. The article changes the law and now provides that remission of a debt in favor or one solidary obligor does not extinguish the solidary obligation, but only reduces it for the other obligors in the amount of the remitted share. The change effected by this new article is substantive; therefore it is not given retroactive effect. LSA-C.C. Art. 8, LSA-Const. Art. 1, § 23; Fabiano v. Bryan, 438 So.2d 719 (La.App. 2d Cir.1983).