308 So.2d 489 (1975)
AETNA CASUALTY AND SURETY COMPANY
v.
CONTINENTAL INSURANCE COMPANY and Standard Materials, Inc., et al.
Rufus A. STICKER, Sr.
v.
T. L. JAMES & COMPANY, INC., and Aetna Insurance Company.
Nos. 10139, 10140.
Court of Appeal of Louisiana, First Circuit.
February 10, 1975.
Rehearing Denied March 12, 1975.
*490 Sam A. LeBlanc, III, and Edward J. Rice, Jr., New Orleans, for Aetna Cas. & Surety Co.
George C. Stringer, Jr., New Orleans, for plaintiff-appellant Rufus A. Sticker.
Leon I. Brainis, Metairie, for intervenor Rufus A. Sticker in 10139.
J. Walter Ward, Jr., New Orleans, for Continental Ins. Co., Standard Materials, Inc. and John Doe.
Before LANDRY, BLANCHE and NEHRBASS, JJ.
BLANCHE, Judge.

No. 10139
In these two consolidated suits, which are also consolidated on appeal, plaintiff-appellants, the widow and children of Rufus A. Stricker, Sr., appeal a judgment of the Twenty-second Judicial District Court denying their tort action against the defendant-appellees, Continental Insurance Company, Standard Materials, Inc., and Leon Jackson. Appellants also appeal the denial of their workmen's compensation claim for total and permanent disability of the deceased against the defendant-appellee, Aetna Casualty and Surety Company. Aetna is the compensation carrier of defendant-appellee, T. L. James and Company, Inc., the employer of Rufus A. Sticker. Aetna, also a plaintiff in the trial court, appeals the dismissal of its subrogation action against the defendant-appellees, Continental Insurance Company, Standard Materials, Inc., and Leon Jackson, wherein it attempted to recover the compensation it paid to Sticker.
On October 28, 1969, Rufus A. Sticker, Sr., was injured while working on a construction site located approximately two miles north of Slidell, Louisiana, where an overpass was being erected on Interstate-12 over the Gulf Mobile and Ohio Railroad.
Aetna paid $5,620.13 for medical treatment to Sticker, as well as compensation of $45 per week for 20 weeks. On September 24, 1970, in District Court Suit Number 32,989, Aetna sued Continental, Standard and Jackson to recover the money it had paid, alleging the negligence of Standard's truck driver, Jackson. On October 28, 1970, Rufus A. Sticker, Sr., intervened in the Aetna suit, naming as defendants Continental, Standard and Jackson. The Continental group answered both petitions, pleading the contributory negligence of Sticker, and in the alternative, that the accident was unavoidable, on the theory that Jackson was being directed by Sticker when the accident occurred.
On April 2, 1971, in District Court Suit Number 33,937, Sticker sued Aetna for workmen's compensation due after the twentieth week from the date of the accident, asking for past-due payments with seven percent interest, and for permanent and total disability. On May 5th, Sticker amended the April 2nd petition to include his employer, T. L. James. On May 12th, Aetna answered Stricker's petition alleging its prior suit in subrogation against Continental, and asked that if further compensation be paid, then Aetna also be granted recovery for that amount against the defendants in prior Suit 32,989.
On July 2, 1971, Suit Numbers 32,989 and 33,937 were consolidated for trial. On May 29, 1973, the widow and major children of Rufus A. Sticker, Sr. were substituted as parties plaintiffs because of Sticker's death on February 25, 1973, for causes unrelated to this litigation.
*491 On June 4, 1974, the trial court rendered judgment rejecting Sticker's tort suit and Aetna's claim for reimbursement. Both Aetna and the Stickers group appealed this decision under this Court's Docket Number 10,139. Also on June 4th judgment was rendered in favor of T. L. James and Aetna, dismissing the Sticker's claim for additional compensation. This decision was appealed under this Court's Docket Number 10,140. Separate judgments will be rendered.
In Appeal 10,139, the Stickers group contend that the trial judge was manifestly erroneous in determining that the truck driver, Jackson, was not negligent. Appellants also cite several cases concerning the standard of care required when backing a vehicle, but all are factually distinguishable from the instant case. Aetna, also an appellant in 10,139, has adopted the argument of the Stickers group concerning the liability of Jackson.
The trial judge simply found for the defendant-appellees as follows:
"A review of the record convinces this court that the plaintiffs have failed to prove negligence on the part of the driver of the concrete truck of Standard Materials, which negligence could be found to be the proximate case of the accident."
We are not favored with the trial judge's review of the evidence and now proceed to review the same in its entirety to determine whether the result reached by him was, as contended by plaintiffs, manifestly erroneous. See Gauguin, Inc. v. Addison, 288 So.2d 893 (La.App. 1st Cir. 1973), Writ Refused 293 So.2d 167 (La.Supreme Court 1974); Martin v. Farkas, 241 So.2d 272 (La.App. 1st Cir. 1970).
The scene of the accident was the easternmost end of an overpass bridge being erected by T. L. James over the Gulf Mobile and Ohio Railroad tracks near Slidell, Louisiana, as part of Interstate-12. Under a sub-contract with T. L. James, Standard Materials, Inc. was the concrete supplier. Dirt was used for the approach to this particular bridge and was roughly graded to ascend at approximately fifteen degrees up to the top of the abutment wall, from which the bridge extended over the tracks to the opposite abutment wall. Steel girders had been erected, projecting out from the abutment wall across the tracks. These girders, once they are linked with girders extending from the opposite side, form the base upon which the road bed rests. Between those girders, and along the top of the abutment wall, reinforcing rods were protruding upward from the concrete. A revetment, to prevent erosion of soil around the base of the bridge, was being poured on the day of the accident. Standard's concrete truck would back up the ascending approach until it reached the abutment wall, then the chutes which direct the concrete would be extended downward between the projecting girders, funneling the concrete down the slope where workers below would work it into the revetment forms. Because the girders were extended outward from the abutment wall, the concrete truck was required to maneuver forward and backward to position the chute between them. Rufus Sticker was directing Jackson in just such a maneuver when the accident occurred.
Jackson testified he had pulled forward and was backing up against the abutment wall, being guided by hand signals from Sticker. Sticker had raised the chute so it would clear the abutment wall and reinforcing rods as the truck pulled forward. He guided the chute with his right hand and signaled Jackson with his left. Suddenly, Jackson could no longer see Sticker's left hand and immediately stopped his truck to investigate, finding that Sticker had fallen to the revetment below, sustaining the injuries of which he complains.
Mr. Sonny Reinhardt, a T. L. James supervisor and the late Mr. Sticker's stepfather, testified that as the truck pulled forward, it stalled and rolled back, pinning Sticker's foot between the chute and the *492 protruding reinforcement rods. However, Jackson, in his testimony, denied the truck had stalled. At the time of the accident, Mr. Reinhardt was approximately 75 feet below at the base of the revetment. He testified as Sticker struggled to release his foot, he fell backward from the abutment wall.
Another witness, Hubert Talley, was also down the revetment slope some 30 to 40 feet from the scene and saw the truck pull forward and then come back some two or three feet, but his testimony did not establish whether the truck rolled backward or was driven backward. He also testified there were the usual construction noises in the vicinity, which could possibly have prevented an accurate determination of whether or not the truck stalled.
Relative to the issue of the truck's backward movement, Jackson contended the approach was on an incline directly up to the abutment wall, whereas Sticker's contention was that a small depression laid just in front of the abutment wall which would have allowed the truck, once it stalled, to roll back several feet, thereby causing the accident. Mr. V. J. Scogin, the President and Manager of Standard Materials testified there was no depression. Reinhardt and Talley both testified they could not see the wheels of the truck and were, therefore, not in a position to determine the actual cause of the truck's backward movement, even though Reinhardt testified there was a depression.
We acknowledge the testimony is conflicting, but the trial judge had the benefit of observing the witnesses and evaluating their demeanor. He was certainly in a position to notice subtleties effecting the credibility of each witness, and his findings are entitled to great weight. Brown v. New, 293 So.2d 562 (La.App. 1st Cir. 1974); Borras v. Falgoust, 285 So.2d 583 (La.App. 4th Cir. 1973). Where two versions of a factual situation are presented at trial, the trial judge's conclusions, inferred from the testimony of witnesses whose credibility he must determine, will be affirmed if there is evidence in the record to support it. McVay v. McVay, 276 So.2d 926 (La.App. 3rd Cir. 1973). For whatever reason the trial judge found the plaintiff failed to prove Jackson's negligence, we find ample evidence in the record which would support that decision. Because we find no manifest error, the trial court decision will not be disturbed.
In Appeal No. 10,140, the Sticker group appeals the denial of further workmen's compensation benefits. Again, the trial judge gave no reasons but simply stated the plaintiff had failed to prove he was entitled to more compensation; therefore, we must search the record to determine if his decision was manifestly erroneous. Sticker's treating physicians, Doctors Macaluso and Sternberg, testified Sticker was totally disabled, although the disability was due to rheumatoid arthritis. The Sticker group contends the accident caused the arthritis. However, a thorough search of 456 pages of medical depositions given by six physicians, plus numerous hospital records introduced at trial, convinces us that rheumatoid arthritis is not caused by an accident or trauma, though trauma may well aggravate a pre-existing arthritic condition. Implicit throughout all the medical depositions was the fact that rheumatoid arthritis is a disease with a transient nature, that is, it will attack and sometimes thereafter, usually within one month, subside. Doctor Gernon Brown testified by deposition that when an attack of rheumatoid arthritis is precipitated by an accident, the attack occurs shortly thereafter, within a couple of weeks at most. Dr. Brown examined Sticker in April of 1970 and observed none of the swelling and tenderness of joints which is characteristic of the disease, but the next month, at the May examination, he did observe such symptoms. He felt that had the October, 1969, accident been directly responsible for the arthritic symptoms he observed in May, then surely symptoms of the disease would have been manifest at the April examination *493 also. Finding no such symptoms in April, he concluded the accident could not have directly caused the swelling and joint pains in May, obviously relying upon the transient nature of the disease. Additionally, Doctor Brown felt there was no causal connection between Sticker's complaint of swelling and pain in both ankles, both knees, both wrists and fingers two years post-accident because that would indicate a generalized arthritic process and would not be related to the injuries received in the accident, which did not involve all of the aforementioned areas.
The record contains ample evidence of joint swelling, characteristic of rheumatoid arthritis prior to the October 1969, accident, which indicates Sticker may have suffered attacks of the arthritis prior to the accident that he contends caused it. For example, Doctor Haddad, an orthopedic surgeon, had seen Sticker in 1966 after a slip-and-fall accident, and he deposed that Sticker was complaining of joint pains at that time and in 1967, with no orthopedic indications therefor. He saw Sticker again post-accident on February 23, 1970, at which time Sticker was complaining of the same symptoms he complained of when he treated him in 1966 and 1967. On March 11, 1970, Doctor Haddad notified Aetna that Sticker could return to work and gradually return to full-time activity.
Doctor Grunsten, another orthopedic surgeon, saw Sticker pre-accident in July, 1969, for symptoms he had sustained in a prior accident on January 31, 1969. Doctor Grunsten deposed that Sticker had a prior history of swelling in the knees.
After searching the record we find no manifest error. Ample evidence was presented upon which the trial judge could determine the accident only precipitated an attack of rheumatoid arthritis and did not cause it, or that Sticker may have suffered with the disease even prior to the accident in question. The trial court's denial of further workmen's compensation benefits is, therefore, substantiated by the record.
For the reasons set forth herein, a decision of the trial court in Appeal Number 10,139 dismissing the claim of Aetna Casualty and Surety Company and also the claim of the widow and children of Rufus A. Sticker, Sr., is affirmed, at appellants' costs.
Affirmed.

NO. 10140
For the reasons assigned herein, the decision of the trial court in Appeal Number 10,140, dismissing the claim of the widow and children of Rufus A. Sticker, Sr., is affirmed at appellants' costs.
Affirmed.