347 So.2d 1200 (1977)
Ronald J. HAYDEL
v.
Philip Henry CLARK, et al.
No. 11258.
Court of Appeal of Louisiana, First Circuit.
June 13, 1977.
Rehearing Denied July 11, 1977.
*1201 James C. Walker, Houma, for plaintiff and appellee.
Leon E. Roy, Jr., New Iberia, for defendants and appellants.
Before LANDRY, EDWARDS and COLE, JJ.
EDWARDS, Judge.
This is a suit by Ronald J. Haydel against Philip Henry Clark and Bennie G. Williams to enforce their obligations arising under Continuing Guaranty agreements executed by them in favor of the Bank of Terrebonne and Trust Company. After trial on the merits, judgment was rendered in favor of Haydel, against Clark and Williams in solido, in the amount of $31,705.06 plus interest and attorney's fees. From this judgment, the defendants have appealed.
An examination of the record discloses the following facts.
The three parties to this suit became acquainted in early 1970 and subsequently formed a corporation, Southern Tubing Rentals, Inc., to engage in the pipe rental business. Plaintiff and defendants each owned one-third (1/3) of the stock in the corporation and each was a member of the Board of Directors. Haydel's function was to arrange the financing of the corporation while the actual management was to be left to the defendants, primarily Williams.
In order to secure the necessary financing, each party, plaintiff and the defendants, executed a continuing guaranty [1] on June 4, 1970 in favor of the Bank of Terrebonne and Trust Company securing amounts to be loaned by that bank to the corporation up to $100,000.00.
On December 7, 1970, the corporation through its president, Williams, issued a *1202 promissory note in the sum of $76,698.00 payable to the order of "myself" and endorsed in blank. The note was payable in 36 monthly installments of $2,130.50 each at 8% per annum interest; and provided for 20% attorney's fees, on principal and interest, in case the note was placed in the hands of an attorney for collection. An acceleration clause was contained in the note which provided that the entire balance of the note would become due, at the option of the holder, if one or more installments were not paid. Additional security for the note was furnished through a chattel mortgage on oil well drill pipe and equipment owned by the corporation.
The corporation was active for only a brief time. During that time, no formal meetings of the Board of Directors or of the stockholders were held.
The corporation paid several installments on the note, but eventually defaulted in its payments. The last payment was made May 21, 1971.
When the bank's efforts to have the corporation resume payments failed, the bank called upon Haydel, Clark and Williams to honor their continuing guaranties. Haydel alone responded.
On August 31, 1971, Haydel made an interest payment of $1,320.00 on the note. He also tried to contact Clark and Williams to get them to assist him in paying the note, but to no avail. Finally on February 8, 1972, Haydel, bound by his personal obligation under the continuing guaranty, purchased the note from the bank for the amount then due, $62,971.92. The bank delivered the note, the chattel mortgage securing the note, and the continuing guaranties to Haydel.
Thereafter, Haydel periodically checked with Clark and Williams about payment on the note; and each time was assured that a "big job" was forthcoming that would provide funds to liquidate the sums due. The big job never materialized and Haydel received no payment on the note.
Meanwhile, Gerald Loring, president of Hydraulic Workover, Inc., approached Haydel in an effort to purchase the drill pipe owned by the corporation. This pipe was encumbered by the chattel mortgage securing the corporation's note. Haydel responded that the pipe was for sale; and that he would have Williams, the president of the corporation, contact Loring regarding the sale.
Haydel contacted Williams and told him of Loring's inquiry. Williams said that he would get in touch with Loring and make a deal to sell the pipe. However, Williams never got in touch with Loring.
When he did not hear from Williams, Loring again contacted Haydel about the pipe. Haydel told Loring that he was a one-third (1/3) stockholder of the inactive corporation and had a right to sell the pipe on behalf of the corporation. Thereupon Loring made a purchase offer of $0.75 per foot which was accepted by Haydel. Loring made a tally sheet on the pipe and computed the sale price as $16,734.33.
A bill of sale was executed which stated that the pipe was being sold by Southern Tubing Rentals, Inc., represented by Ronald Haydel its duly authorized officer, to Hydraulic Workover, Inc. The bill of sale also contained an intervention paragraph drafted for the signatures of Clark and Williams, the remaining stockholders of the corporation, but neither signed the bill of sale.
Loring paid the $16,734.33 purchase price with his personal check. This check was made payable to Haydel and deposited by him into his personal account.
Williams found out about the sale when Loring picked up the pipe from the yard where it was stored. He did not inquire about or raise objections to the sale. Clark found out about the sale a few days after it was consummated. He likewise did not inquire about or object to the sale.
Thereafter, Haydel again attempted to have Clark and Williams pay their proportionate share of the corporation's debt. When he received no response, the present suit was instituted.
The defendants contended at trial that Haydel sold the mortgaged pipe as mortgage *1203 creditor of the corporation at private sale without appraisal, thereby discharging the balance of the debt under the provisions of the Deficiency Judgment Act, LSA-R.S. 13:4106.
The trial court rejected defendants' contention and held that the pipe was sold by Southern Tubing Rentals, Inc., and not Haydel. Further the trial court found that Haydel negotiated the sale in his capacity as shareholder and director of the corporation, and not in his capacity as mortgagee-creditor. Accordingly, the court held that the Deficiency Judgment Act was inapplicable to the facts of the present case. Therefore, Clark and Williams were accountable to plaintiff for the corporation's debt under the continuing guaranty agreements, with a credit for the sum realized by the sale of the pipe.
The central issue presented for review is the correctness of the trial court's factual conclusion that the corporation, not Haydel, sold the drill pipe to Loring and, corollary thereto, the applicability of the Deficiency Judgment Act.
Initially, we note that the findings of the trial court, as the trier of fact, are entitled to great weight and will not be disturbed unless they are manifestly erroneous. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Aetna Casualty & Surety Co. v. Continental Insurance Co., 308 So.2d 489 (La.App.1st Cir. 1975). Under this standard of review, we must examine the evidence and testimony in the record to determine if there is a reasonable basis to support the factual conclusions reached by the trier of fact.
The record clearly shows that Haydel's actions belie the existence of an intent on his part to dispose of the mortgaged assets of the corporation in his capacity as creditor. When he was first contacted by Loring regarding the sale of the pipe, Haydel stated that negotiations for the sale should be conducted with Williams, the president of the corporation. Indeed, Haydel contacted Williams and informed him of Loring's interest in purchasing the pipe. Haydel received Williams' assurance that he would get in touch with Loring and make a deal for the sale of the pipe.
It was only when Loring called the second time that Haydel realized that he would personally have to take some action on behalf of the corporation in order to avoid losing the sale. During this conversation, Haydel stated that as a stockholder and director of the corporation he had a right to sell the pipe on behalf of the corporation. The bill of sale states clearly that the pipe is being sold by Southern Tubing Rental, Inc., the corporation.
The only evidence, even hinting that Haydel might be the vendor of the pipe, is the fact that the check representing the purchase price was made payable to him personally and deposited, by him, in his personal account. Haydel's explanation was that he wanted the check, drawn on Loring's personal account, to clear the bank as quickly as possible and that to obtain Williams' endorsement would have taken additional time. We believe that this explanation, coupled with the evidence in the record of the inaccessibility of Williams, validates Haydel's actions as an agent of the corporation.
Defendants argue that Haydel's actions in selling substantially all of the assets of the corporation were not authorized and violated the provision of LSA-R.S. 12:121. We do not reach this contention, as we fail to see how Haydel's lack of authority would absolve the defendants of their obligations under the guaranty agreements. Whether or not the sale was properly authorized, the evidence in the record indicates that the intended vendor of the pipe was the corporation.
Clearly there is ample evidence in the record to support the trial judge's conclusion that the corporation was the vendor in the sale of the drill pipe. Canter, supra.
*1204 The Deficiency Judgment Act[2] by its own terms, only covers sales of encumbered property by the "mortgagee or other creditor." Accordingly, the Act has no application to the present case since the mortgaged property was sold by its owner, the corporation, and not by a "mortgagee or other creditor."
The defendants are therefore liable under the terms of their continuing guaranty agreements for the corporation's debt.
For the reasons assigned, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] The genuineness of the guaranties and the corporation's promissory note is not disputed.
[2] LSA-R.S. 13:4106

If a mortgagee or other creditor takes advantage of a waiver of appraisement of his property, movable, immovable, or both, by a debtor, and the proceeds of the judicial sale thereof are insufficient to satisfy the debt for which the property was sold, the debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor. The mortgagee or other creditor shall not have a right thereafter to proceed against the debtor or any of his other property for such deficiency, except as provided in the next paragraph.
If a mortgage or pledge affects two or more properties, movable, immovable, or both, the judicial sale of any property so affected without appraisement shall not prevent the enforcement of the mortgage or pledge in rem against any other property affected thereby. As amended Acts 1952, No. 20, § 1; Acts 1960, No. 32, § 1. (emphasis added)