OPINION
 

 ALVIN B. RUBIN, Circuit Judge:
 

 Julian Perry, the President of Perry Chrysler Plymouth, Inc., took over $100,-000 in cash that the corporation was holding for Chrysler Credit Corporation with him to Las Vegas in the hope of winning enough to succor his failing automobile dealership. He knew he was taking money that did not belong either to him or to his corporation. We consider the price he must pay for his losses at the gaming tables.
 

 I.
 

 Perry Chrysler Plymouth, Inc., a Louisiana corporation, was the franchise dealer for Chrysler automobiles in Rapides Parish, Louisiana. Julian Perry was its president and sole shareholder. Chrysler Credit Corporation financed the dealer’s purchase of automobiles, taking as security a chattel mortgage on his total stock, known in the trade as a floor plan mortgage. Ordinarily, a chattel mortgage follows the mortgaged property into the hands of a buyer. However, under Louisiana law, a good faith buyer of an automobile is protected against such a floor plan mortgage, and the lender’s mortgage does not afford it security against sales of the mortgaged property in the normal course of business.
 
 [1]
 

 For this reason, Chrysler Credit’s agreement with Perry Chrysler Plymouth provided that the mortgagor might sell the mortgaged automobiles in the regular course of its retail trade. If it did so, however, “the proceeds of each such sale, and the evidence thereof in whatever form the same may be, shall be the property of the Mortgagee [Chrysler Credit] and shall be held in trust by the Mortgagor for the use and benefit of the Mortgagee and the Mortgagor agrees as such trustee to deliver such proceeds and such evidence of sale immediately upon his or its receipt thereof to the Mortgagee_” The promissory notes secured by the floor plan mortgage and the mortgage itself were signed by Perry Chrysler Plymouth. In addition, Julian Perry and his wife, Jerre, personally signed a continuing guaranty agreement with Chrysler Credit. This agreement provided that Julian and Jerre Perry were each to be a “primary obligor, jointly and severally, and unconditionally [bound] ... for all of [Perry Chrysler Plymouth’s] present and future obligations owing to” Chrysler Credit. When, from time to time, vehicles were delivered to Perry Chrysler Plymouth, Perry, as its president, executed a separate promissory note and a trust receipt for the purchase price of each vehicle. These documents required Perry Chrysler Plymouth to “keep the proceeds of any sale separate from all other funds and on the day of the receipt of such proceeds to transmit them to” Chrysler Credit.
 

 Perry Chrysler Plymouth complied with the terms of its agreement until May 1981. By that time, the dealership was in serious financial difficulty. Perry took from the dealership in cash the proceeds from the sale of a number of vehicles and did not remit them to Chrysler Credit. Instead, he went to Las Vegas where, in three days, instead of achieving his hopes, he lost virtually all of the money. Between May 22 and July 1, 1981, Perry Chrysler Plymouth issued nineteen checks to Chrysler Credit totalling $110,000. These checks represented, in whole or in part, the proceeds from the sales of individual vehicles, which were to have been held in trust. The checks were dishonored because of the losses Perry had incurred in Las Vegas.
 

 
 *483
 
 Chrysler Credit sued Perry Chrysler Plymouth in June 1981 for the full sum due it, and utilizing Louisiana’s executory process, foreclosed on the chattel mortgage. At that time, the chattel mortgage covered 86 vehicles, securing an obligation of $585,-000. Of these, only 51 were still held by Perry Chrysler Plymouth. Chrysler Credit seized these cars and sold them
 
 in globo
 
 at auction for $244,000 to the highest bidder, who was, not surprisingly, Chrysler Credit.
 

 To recover the balance owed it, $344,000, Chrysler Credit brought suit in state court for a deficiency judgment against Perry Chrysler Plymouth. The state court dismissed the suit because Chrysler Credit’s judicial sale of the 51 vehicles was defective,
 
 inter alia,
 
 for want of an appraisal, thus aborting its right to a deficiency judgment,
 
 [2]
 
 and extinguishing the remaining debt owed by Perry Chrysler Plymouth to Chrysler Credit.
 

 Chrysler Credit then filed this action against Perry Chrysler Plymouth, Julian Perry, and Jerre Perry seeking to recover the same $344,000 balance, but offering three alternative theories for the defendant’s liability. It argued that: (1) the Per-rys were liable in their personal capacity on the continuing guarantees they had executed; (2) the Perrys and Perry Chrysler Plymouth were liable for tortious conversion of the sales proceeds held by Perry Chrysler Plymouth for Chrysler Credit but taken and gambled away by Julian Perry in Las Vegas; and (3) the corporation and the Perrys were liable for the nineteen checks made payable to Chrysler Credit but dishonored.
 

 During the pendency of the suit, the Perrys filed a petition in bankruptcy and were discharged. The district court rendered summary judgment holding that the Perrys were not liable on their continuing guarantees because of the forfeiture of the right to a deficiency judgment against the corporation, but that Julian Perry was liable for tortious conversion of $220,000 — the unremitted amount of money owing to Chrysler Credit from the sale of the 35 vehicles covered by the floor plan mortgage that had been sold by Perry Chrysler Plymouth. The court held, moreover, that this debt was not discharged in bankruptcy. Julian Perry brings this appeal.
 

 The legal questions presented are: whether, under Louisiana law, Perry became personally liable to Chrysler Credit either for the whole debt due it or for the amount taken for his own use from funds realized on the sale of mortgaged vehicles and required, pursuant to the floor plan mortgage, to be remitted promptly to Chrysler Credit; and, if Perry is so liable, whether the debt was discharged either by later foreclosure of the chattel mortgage without compliance with the Louisiana Deficiency Judgment Act or by his bankruptcy. We affirm the district court judgment holding Perry liable, but only for the amounts taken by him for his Las Vegas gambit or otherwise for his personal use, and we remand for a determination of that sum.
 

 II.
 

 In Louisiana, delictual actions based on unlawful interference with the ownership or possession of movables are frequently termed actions for “conversion.”
 
 [3]
 
 The Louisiana Court of Appeals has said, “[t]he common law tort of conversion — a distinct act of dominion wrongfully exerted over another’s property in denial of or inconsistent with the owner’s right therein — has been recognized by Louisiana courts for over a century as an offense or quasi offense under LSA-C.C. Art. 2315.”
 
 [4]
 
 Despite the similarity in labels, the Louisiana action is only rarely completely identifiable with actions based on the common-law
 
 *484
 
 tort.
 
 [5]
 
 In this area, therefore, as Professor A.N. Yiannopoulos has written, the law of Louisiana appears to be a hybrid, with characteristics borrowed from both the common law and the civil law.
 
 [6]
 
 The Louisiana Supreme Court held in
 
 Importsales, Inc. v. Lindeman
 

 [7]
 

 that Louisiana does, however, recognize a cause of action for the wrongful act of repudiation of the owner’s right to property, or some exercise of dominion over it inconsistent with the owner’s right. Explaining the basis for this cause of action, Louisiana courts have cited with approval Dean Prosser’s analysis:
 

 The intent required is not necessarily a matter of conscious wrongdoing. It is rather an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff’s rights_ Persons ... exercise acts of ownership over them at their peril, and must take the risk that there is no lawful justification for their acts.
 
 [8]
 

 Thus, the focus is on the act committed in order to determine whether it constitutes a tort; whether the act was done intentionally or negligently is of no moment.
 
 [9]
 

 We, therefore, agree, albeit with slight modification, with the district court’s characterization of the plaintiff’s burden in proving this claim. For Chrysler Credit to prevail against Perry, it must prove that (1) it owned funds misused by him; (2) the misuse was inconsistent with its rights of ownership; and (3) the misuse constituted a wrongful taking of the funds.
 

 The documents signed by Perry Chrysler Plymouth provided categorically that any proceeds from the sale of the vehicles covered by the floor plan mortgage must be kept separate from Perry Chrysler Plymouth’s funds, held in trust for Chrysler Credit, and transferred immediately to it.
 
 [10]
 
 This was sufficient to create a fiduciary duty on the corporation’s part.
 
 [11]
 
 Its failure to segregate and remit the funds and its diversion of them to its own uses constituted a conversion for which it is liable.
 

 Traditionally, the measure of damages for a tortious conversion is the value of the property wrongly appropriated plus interest.
 
 [12]
 
 Perry Chrysler Plymouth sold 35 vehicles covered by the floor plan mortgage without properly remitting the proceeds, the sum of $220,000. This is the amount that was converted by Perry Chrysler Plymouth, 'and the total sum for which it is liable.
 

 As an officer of the corporation, Perry is not personally liable for the tor-tious acts of the corporation in the absence of his own fraud, malfeasance, or other wrongdoing.
 
 [13]
 
 To hold Perry personally liable for the entire corporate debt of $220,-000, Chrysler Credit must prove that Perry, in his capacity as president, directed Perry Chrysler Plymouth to breach its fiduciary duty toward Chrysler Credit and convert the proceeds from the sale of the 35 mortgaged vehicles. Such evidence was simply
 
 *485
 
 not presented on the motion for summary judgment. The summary judgment must, therefore, be reversed insofar as it held Perry personally liable for the entire corporate debt by virtue of his status as a corporate officer.
 

 There is, however, another basis for holding Perry personally liable for some of the funds that were diverted from Chrysler Credit. Apart from his possible personal liability as a corporate officer, he is liable for any money belonging to Chrysler Credit that he converted to his own use. Perry knew that the proceeds from the car sales were the property of Chrysler Credit. When he took those funds for his personal use, he committed a conversion for which he is liable in tort. Summary judgment on the fact of his individual liability was, therefore, proper.
 

 The only evidence submitted on the summary judgment motion, however, that Perry converted Chrysler Credit’s funds to his personal use is his admission that he took its money to Las Vegas. The amount of money that he took is uncertain. When asked in deposition how much he lost in Las Vegas, Perry replied, “I don’t remember, really; all I know it was in excess of $100,000.00.” Because the amount of the converted funds is uncertain, we vacate the summary judgment insofar as it fixed the amount due Chrysler Credit and remand for trial or such further proceedings as may be appropriate to determine the amount of funds Perry converted to his personal use.
 

 III.
 

 Perry argues that his indebtedness is discharged because Chrysler Credit failed to comply with Louisiana’s Deficiency Judgment statute and thereby “extinguished the entire debt of” $585,000. This argument is misplaced.
 

 Louisiana’s Deficiency Judgment statute
 
 [14]
 
 provides in pertinent part:
 

 If a mortgagee or other creditor takes advantage of a waiver of appraisement of his property ... by a debtor, and the proceeds of the judicial sale therefore are insufficient to satisfy the debt for which the property was sold, the debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor. The mortgagee or other creditor shall not have a right thereafter to proceed against the debtor ... for such deficiency_
 

 In the state court suit brought by Chrysler Credit for a deficiency judgment against Perry Chrysler Plymouth, the court held that Chrysler Credit had not properly invoked executory process and had thereby relinquished its right to a deficiency judgment for the balance owed from Perry Chrysler Plymouth, the principal obligor.
 

 In Louisiana, the extinction of the principal obligation releases those secondarily liable. We agree with the district court that a creditor is precluded from obtaining a deficiency judgment against the debtor’s non-solidary surety when it has lost its right to a deficiency judgment against the principal debtor.
 
 [15]
 

 Chrysler Credit argued below that Perry was not a surety for Perry Chrysler Plymouth, but was, in fact, a solidary co-debtor by virtue of the language in the continuing guarantee agreement which bound him “jointly and severally” for the debts of Perry Chrysler Plymouth, Louisiana Civil Code Article 3045, as interpreted by the courts,
 
 [16]
 
 provides that, when a surety binds himself in solido with a debtor in the sure-tyship contract, the surety is governed in his relationship with the creditor as a soli-dary co-obligor with the debtor. In
 
 General Motors Acceptance Corp. v. Smith,
 

 [17]
 

 
 *486
 
 the court accepted arguendo the plaintiffs argument that the defendant surety was, in effect, a solidary co-debtor. The court considered, but did not decide, whether the soli-dary surety’s liability was directly affected by the principal obligor’s discharge.
 
 [18]
 
 It concluded, nonetheless, that, because the surety retained its right to contribution from the debtor in the event the surety was required to satisfy the debt, permitting the creditor to recover from the surety would, in effect, circumvent the public policy evinced in the Deficiency Judgment Act.
 
 [19]
 
 We agree
 

 While Chrysler Credit’s reliance on Perry’s continuing guarantee for recovery of the balance owed it by Perry Chrysler Plymouth is illfounded, so too is Perry’s attempt to use the Deficiency Judgment Act as a shield for all of his obligations. The district court held Perry liable for tor-tious conversion of the trust funds that should properly have been remitted to Chrysler Credit. This theory of recovery is
 
 ex delicto
 
 and wholly unrelated to any contractual obligation owed by Perry or his corporation. The sole effect of the Deficiency Judgment Act is to relieve the debt- or of his obligation on notes representing the underlying contractual obligation, not to discharge his obligations in tort.
 

 IV.
 

 Perry argues alternatively that his release in bankruptcy during the pendency of this suit should relieve him of any debt to Chrysler Credit. The district court disagreed, relying on 11 U.S.C.A. § 523(a)(4) (West 1979 & Supp.1985). That section provides, “[a] discharge under ... this title does not discharge an individual debtor from any debt ... for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.” The court concluded that Perry was “liable for committing a sort of theft ...” and thereby was not entitled to a discharge. Perry’s undertaking as solidary co-obligor with Perry Chrysler, however, did not create a fiduciary duty to Chrysler Credit in his individual capacity so as to make any misuse by the corporation “fraud or defalcation” on his part under section 523(a)(4).
 
 [20]
 
 Because we find that, to the extent he converted funds to his own use, Perry’s debt to Chrysler Credit was nondischargeable under another subpart of section 523, we do not consider whether the tortious conversion is also tantamount to embezzlement or larceny within the meaning of section 523(a)(4).
 

 An individual is not entitled to a discharge from any debt “for willful and malicious injury by the debtor to another entity or to the property of another entity.”
 
 [21]
 
 “Willful” means intentional and “malicious” means without just cause or excuse.
 
 [22]
 
 Perry knew that the money he took to Las Vegas was the property of Chrysler Credit.
 
 [23]
 
 Neither common sense nor statutory construction can stretch his professed purpose of winning enough money to save his dealership into a valid cause or excuse.
 
 [24]
 

 
 *487
 
 Therefore, we AFFIRM the district court’s finding that Perry Chrysler is liable for the full balance due Chrysler Credit and that Julian Perry is personally liable to the extent that he has tortiously converted the trust funds held for Chrysler Credit. We VACATE the summary judgment insofar as it determines the amount due and REMAND for further proceedings consistent with this opinion.
 

 [1]
 

 . La.Rev.Stat.Ann. § 32:710(C) (West Supp.1985).
 

 [2]
 

 .
 
 See
 
 Louisiana’s Deficiency Judgment Act, La. Rev.Stat.Ann. § 13:4106 (West 1968).
 

 [3]
 

 . Yiannopoulos,
 
 Real Actions in Louisiana and Comparative Law,
 
 25 La.L.Rev. 589, 663 (1965).
 

 [4]
 

 . Madden
 
 v.
 
 Madden,
 
 353 So.2d 1079, 1081 (La.App.2d Cir. 1977).
 
 See also Importsales, Inc. v. Lindeman,
 
 231 La. 663, 92 So.2d 574 (1957).
 

 [5]
 

 . Yiannopoulos,
 
 supra
 
 note 3, at 663, 92 So.2d 574.
 

 [6]
 

 .
 
 Id.
 
 at 663-64.
 

 [7]
 

 . 231 La. 663, 92 So.2d 574, 576 (1957).
 
 See also Holley v. Singletary,
 
 464 So.2d 410, 413 (La.App. 1st Cir.1985):
 
 Arena v. K-Mart Corp.,
 
 439 So.2d 528, 530 (La.App. 1st Cir.),
 
 writ denied,
 
 443 So.2d 585 (La.1983);
 
 Lincecum v. Smith,
 
 287 So.2d 625, 627 (La.App.3d Cir.1973),
 
 writ refused,
 
 290 So.2d 904 (La.1974).
 

 [8]
 

 .
 
 Lincecum v. Smith,
 
 287 So.2d 625, 628 (La.App. 3d Cir.1973),
 
 writ refused,
 
 290 So.2d 904 (La.1974),
 
 quoting
 
 W. Prosser, Handbook on the Law of Torts 83-84 (3d ed. 1964).
 
 See also Harper Oil Field Servs. v. Dugas,
 
 451 So.2d 96, 101 (La.App. 3d Cir.1984).
 

 [9]
 

 .
 
 Deshotels v. Statewide Trailer Sales,
 
 333 So.2d 259, 260 (La.App. 1st Cir.1976).
 

 [10]
 

 .
 
 See supra,
 
 text following note 1.
 

 [11]
 

 .
 
 Canal-Commercial T & S Bank v. N.O.T. & M. Ry. Co.,
 
 161 La. 1051, 109 So. 834, 839 (1926).
 

 [12]
 

 .
 
 Ortego v. Ortego,
 
 471 So.2d 1106, 1110 (La.App. 3d Cir.1985);
 
 Holland v. First Nat'l Bank of Crowley,
 
 398 So.2d 186, 189 (La.App. 3d Cir.1981).
 

 [13]
 

 .
 
 Automatic Coin Enters., Inc. v. Vend-tronics, Inc.,
 
 433 So.2d 766, 767 (La.App. 5th Cir.1983).
 

 [14]
 

 . La.Rev.Stat.Ann. § 13:4106 (West 1968).
 

 [15]
 

 .
 
 Domingues Motors, Inc. v. Lalonde,
 
 417 So.2d 900, 903 (La.App. 3d Cir.1982);
 
 General Motors Acceptance Corp. v. Smith,
 
 399 So.2d 1285, 1287 (La.App. 4th Cir.1981).
 

 [16]
 

 .
 
 See Louisiana Bank and Trust Co., Crowley v. Boutte,
 
 309 So.2d 274 (La.1975).
 

 [17]
 

 . 399 So.2d 1285 (La.App. 4th Cir.1981).
 

 [18]
 

 .
 
 Id.
 
 at 1287-88, and n. 4.
 

 [19]
 

 . La.Rev.Stat.Ann. § 13:4107 (West 1968).
 

 [20]
 

 .
 
 See John P. Maguire & Co. v. Herzog,
 
 421 F.2d 419 (5th Cir.1970) (president of a Georgia corporation who applied the proceeds from sales of furniture under a floor-plan mortgage to the accounts of other creditors, committed a misappropriation and the debt to the floor-plan creditor was not discharged in the president’s personal bankruptcy; decided under predecessor of § 523(a)(4)).
 

 [21]
 

 . 11 U.S.C.A. § 523(a)(6) (West 1979 & Supp. 1985).
 

 [22]
 

 .
 
 Seven Elves, Inc. v. Eskenazi,
 
 704 F.2d 241, 245 (5th Cir.1983);
 
 Matter of Dardar, 620
 
 F.2d 39, 40 (5th Cir.1980) (interpreting § 17(a)(8) of the Bankruptcy Act, 11 U.S.C.A. § 35(a)(8) (West 1976) (repealed), the predecessor to the current Bankruptcy Code);
 
 Vickers v. Home Indem. Co.,
 
 546 F.2d 1149, 1150 (5th Cir.1977) (also interpreting § 17(a)(8) of the Bankruptcy Act).
 

 [23]
 

 . "Willful and malicious injury” under section 523(a)(6) covers a willful and malicious conversion. 3 Collier on Bankruptcy ¶ 523.16, 523-127 (15th ed. 1985),
 
 citing
 
 124 Cong.Rec. H11, 095-96 (daily ed. Sept. 28, 1978).
 

 [24]
 

 .
 
 See Ford Motor Credit Co. v. Klix,
 
 23 B.R. 187 (Bankr.E.D.Mich.1982).
 
 See generally
 
 3 Collier on Bankruptcy ¶ 523.16[3], 523-137-41 (15th ed. 1985).