In re James W. SMITH, II, Debtor.

**FEDERAL DEPOSIT INSURANCE COR-PORATION, as Receiver of Vernon Savings and Loan Association, FSA, Plaintiff-Appellee-Cross-appellant,**

v.

**James W. SMITH, II, Defendant-Appellant-Cross-appellee.**

Civ. A. Nos. 3:93–CV–0226–D, 3:93–CV–0399–D.

United States District Court, N.D. Texas, Dallas Division.

Oct. 25, 1993.

Brenda H. Collier (argued), Collier & Associates, Dallas, TX, for plaintiff-appellee-cross-appellant.

Daniel J. Sheehan, Jr. (argued) and Denise A. Bretting, Sheehan, Young & Culp, P.C., Dallas, TX, for defendant-appellant-cross-appellee.

FITZWATER, District Judge:

In this appeal and cross-appeal from a judgment of the bankruptcy court holding one debt dischargeable and another debt nondischargeable, the court finds no reversible error. The judgment is therefore affirmed.

## I

This adversary proceeding returns to the court following the bankruptcy court's judgment on remand from this court's decision in *In re Smith*, 133 B.R. 800 (N.D.Tex.1991) ("*Smith I*"), rev'g 113 B.R. 297 (Bankr. N.D.Tex.1990). James W. Smith, II

("James"), a chapter 7 debtor, appeals the portion of the bankruptcy court judgment that holds one of his debts nondischargeable on the basis of 11 U.S.C. § 523(a)(6). The Federal Deposit Insurance Corporation, as Receiver of Vernon Savings and Loan Association, FSA ("FDIC–Receiver"), cross-appeals the portion of the judgment that discharges another debt.

The relevant background facts of this case are set out at length in the bankruptcy court's opinion in *In re Smith*, 113 B.R. at 298–304. The court therefore recounts only the facts pertinent to the present appeal, together with the applicable procedural history.

In 1987 defendant-appellant-cross-appellee James and his cousin, Vernon S. Smith, Jr. ("Vernon"), filed chapter 7 petitions. Thereafter, the FDIC–Receiver [1] initiated adversary proceedings in each of the debtor's cases to determine the nondischargeability of the Cedar Springs, Celestial/Montfort, and New York Avenue loans. The FDIC–Receiver alleged the loans were made by the failed Vernon Savings and Loan Association ("VSLA") as part of a scheme among James, Vernon, Don Dixon ("Dixon"), who was VSLA's principal owner, and other VSLA senior officers. The participants allegedly intended to dissipate the assets of and to injure VSLA and the insurance fund of the Federal Savings and Loan Insurance Corporation ("FSLIC"), and to benefit Dixon and VSLA's senior officers. The FDIC–Receiver predicated its complaint on several theories, including the arguments that the debts in question were not dischargeable pursuant to various provisions of 11 U.S.C. § 523(a).

The two adversary proceedings were tried to the bankruptcy court in a consolidated bench trial. Concluding that James and Vernon had engaged in conduct that made the Cedar Springs and Celestial/Montfort loans nondischargeable pursuant to § 523(a)(2)(A), the bankruptcy court found in favor of the FDIC–Receiver as to these transactions and concluded neither debt was dischargeable. The bankruptcy court held the New York Avenue loan was discharged.[2] On appeal, this court held the FDIC–Receiver could not invoke the common law *D'Oench, Duhme* [3] doctrine to establish affirmatively the reliance element of a § 523(a)(2)(A) nondischargeability claim. *See Smith I*, 133 B.R. at 806. The court remanded the cases so that the bankruptcy court could determine whether the debts should nevertheless be held nondischargeable on the basis of § 523(a)(6). *Id.* at 811.

On remand,[4] the bankruptcy court discharged James from the Celestial/Montfort debt on the ground that the FDIC–Receiver had not proved the amount of its injury under § 523(a)(6). The court held the FDIC–Receiver had satisfied the requirements for § 523(a)(6) nondischargeability as to the Cedar Springs debt and denied discharge of the entire amount of the debt, plus interest. It found that James and Vernon had conspired with VSLA, through its principal owner, Dixon, to conceal the true nature and amount of the Cedar Springs loan. VSLA's subsidiary, Dondi Residential Properties, Inc. ("DRPI"), owned distressed property with loans reflected as assets on VSLA's books. The thrift had to remove the loans from its books to avoid facing auditing requirements that would obligate it to write down the value of the loans as assets. VSLA wanted to give an illusion of a sale and new loan. James and Vernon conspired with Dixon to conceal the purpose and amount of the loan. James and Vernon knew that development of the Cedar Springs tract was not in prospect and that they could not service the loan, and agreed with VSLA that they were not required to pay the loan or any interest payments. They knew the impermissible

---

1. The FDIC–Receiver succeeded the Federal Savings and Loan Insurance Corporation, which originally filed the complaints. *See Smith I*, 133 B.R. at 802 n. 2. For clarity the court refers to the plaintiff-appellee-cross-appellant as the FDIC–Receiver.

2. The bankruptcy court's decision regarding the New York Avenue loan was not appealed in *Smith I* and is not the subject of the instant appeal.

3. *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

4. The parties agreed to submit the § 523(a)(6) issue on the basis of the original trial record.

purpose for the loan but participated in the conspiracy in exchange for a promise of future financial assistance to their own financially strapped enterprises. The conspirators concealed the facts that would have shown that the loan violated applicable banking regulations. James and Vernon conspired to conceal the true purpose and amount of the loan from the lending institution's examiners. They acted without just cause or excuse, and knew or should have known that their actions would result in an injury to the insurance fund.

James appeals the bankruptcy court's judgment to the extent it denies discharge of the Cedar Springs debt.[5] The FDIC–Receiver cross-appeals the portion of the judgment that discharges the Celestial/Montfort debt.

## II

The court turns first to James' appeal from the bankruptcy court's determination that the Cedar Springs debt is nondischargeable based on the "willful and malicious" injury exception to discharge set forth in § 523(a)(6).

### A

James contends the FDIC–Receiver waived any right to obtain a judgment of nondischargeability on the basis of § 523(a)(6) because in *Smith I* it did not appeal the bankruptcy court's failure to make findings and conclusions regarding § 523(a)(6). James argues the FDIC–Receiver should have objected in the bankruptcy court and in this court when the bankruptcy court decided the proceedings on the basis of § 523(a)(2)(A) and declined to reach the § 523(a)(6) issue. He contends this court should have reversed and rendered in *Smith I,* and therefore acted improperly when it remanded the § 523(a)(6) claim for further proceedings.

■ The court disagrees with James' analysis. Pursuant to 28 U.S.C. § 2106, an appellate court has explicit authority to remand a case for further proceedings.[6] These may include consideration of an issue raised in the first proceeding but not conclusively addressed by the lower court. *See Dandridge v. Williams,* 397 U.S. 471, 476 n. 6, 90 S.Ct. 1153, 1157 n. 6, 25 L.Ed.2d 491 (1970) ("When attention has been focused on other issues, or when the court from which a case comes has expressed no views on a controlling question, it may be appropriate to remand the case."). The bankruptcy court expressly declined to reach the FDIC–Receiver's § 523(a)(6) contention because it held the loans nondischargeable on the basis of § 523(a)(2)(A). *See In re Smith,* 113 B.R. at 308. The court below expressed no view regarding this basis for nondischargeability because it was unnecessary to do so in light of its disposition of the § 523(a)(2)(A) claim. This court did not err when it remanded the § 523(a)(6) issue; the bankruptcy court did not improperly consider on remand whether the Cedar Springs debt was nondischargeable pursuant to § 523(a)(6).

### B

James argues that the bankruptcy court's findings, even if correct, do not satisfy the requirements for a § 523(a)(6) "willful and malicious injury."

■ Section 523(a)(6) is an exception to the right of discharge contained in the Bankruptcy Code. It precludes the discharge of a debtor "from any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity." *Id.* " 'Willful' means intentional and 'malicious' means without just cause or excuse." *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.,* 783 F.2d 480, 486 (5th Cir. 1986). To be "malicious" the act must be

---

**5.** Vernon has also appealed the bankruptcy court's denial of discharge of the Cedar Springs debt. His appeal was docketed with another judge of this court.

**6.** 28 U.S.C. § 2106 provides, in pertinent part: [A]ny ... court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

done in conscious disregard of one's duties, or without just cause or excuse, but does not require ill will or specific intent to do harm. *See In re Dean,* 79 B.R. 659, 662 (Bankr. N.D.Tex.1987). The "standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the evidence standard." *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991); *In re Luce,* 960 F.2d 1277, 1281 (5th Cir.1992). "As an exception to dischargeability, § 523 is to be narrowly construed." *Smith I,* 133 B.R. at 805.

The bankruptcy court found that James and Vernon had concealed from federal banking authorities the true purpose and amount of the Cedar Springs loan. This information prevented the regulators from determining whether VSLA's federal deposit insurance should be terminated on the ground that VSLA was engaging in unsafe or unsound practices. The concealment caused injury to the FDIC's insurance fund[7] when Vernon and James defaulted on the Cedar Springs debt. The bankruptcy court found this conduct amounted to participation in a conspiracy to conceal, which "is in the nature of a tort and covered by § 523(a)(6)."

■ James contends the bankruptcy court created a new tort of "conspiracy to conceal," which he argues is actually the tort of fraud without the reliance element, in order for the Cedar Springs debt to fit within § 523(a)(6). He posits that this permits the FDIC–Receiver to avoid a reliance requirement that it cannot satisfy, and urges that a creditor must instead show a distinct, wrongful act other than fraud in order to satisfy § 523(a)(6). The FDIC–Receiver responds that § 523(a)(6) does not mandate proof of an independent, recognized tort, but instead requires only the showing that the debtor's actions were willful and malicious, *i.e.,* done intentionally and without just cause or excuse.

The court agrees with the FDIC–Receiver. Several courts have held debts to be nondischargeable pursuant to § 523(a)(6) without doing so on the basis of an independent tort. In each case the dispositive question was whether the debtor's actions constituted willful and malicious conduct. *See, e.g., In re Cerar,* 97 B.R. 447, 452 (C.D.Ill.1989), *aff'g* 84 B.R. 524 (Bankr.C.D.Ill.1988) (bankruptcy court did not clearly err in finding that debtor, who forged note in cooperation with bank officials to prevent examiner from determining overline loan situation with respect to debtor, had acted willfully and maliciously so that debt was nondischargeable pursuant to § 523(a)(6)); *In re Culp,* 140 B.R. 1005, 1014–15 (Bankr.N.D.Okla.1992) (where debtor's execution of false note was intentional and deliberate, with knowledge of falsity, and debtor knew note would be offered to regulators to deceive them as to stock brokerage firm's actual net capital ratio, thus enabling firm to continue irregular operations longer than law allowed, and debtor specifically intended the illegal consequences, debtor's conduct was willful and malicious and debt was nondischargeable pursuant to § 523(a)(6)); *In re Lefeve,* 131 B.R. 588, 601–603 (Bankr. S.D.Miss.1991) (debtor's intentional submission of materially false financial statement, which aided in false depiction of a sound loan from a secure institution, contributing to failure of thrift, was willful and malicious under § 523(a)(6)); *In re Powell,* 95 B.R. 236, 240 (Bankr.S.D.Fla.1989) (debtor who falsely represented to stockbroker that he was acting on behalf of a third party and had funds necessary to make certain deposits required by creditor, and who requested that creditor purchase stock on their behalf, committed actual fraud and acted willfully and maliciously, making debt nondischargeable pursuant to §§ 523(a)(2)(A) and 523(a)(6)).[8] Accordingly, the court holds it was not necessary for the bankruptcy court to find that James' actions constituted an independent tort other than fraud in order to hold the

---

**7.** For clarity the court refers to the FDIC, although the FSLIC was still insuring VSLA at the relevant time.

**8.** The courts in *In re Cerar,* 97 B.R. at 450, *In re Culp,* 140 B.R. at 1013, and *In re Lefeve,* 131 B.R. at 595, relied upon *D'Oench, Duhme* to satisfy an element of the creditor's claim. This court declined to do so in *Smith I,* 133 B.R. at 806. The court continues to adhere to that decision and respectfully disagrees with the opinions cited to the extent they would hold differently on that question.

Cedar Springs debt nondischargeable pursuant to § 523(a)(6).

The bankruptcy court was only required to find that James' willful and malicious conduct caused damage to the FDIC–Receiver.[9] "[T]his court may affirm a correct judgment for reasons not given by the court below or advanced to it." *Cimmaron Oil Co. v. Cameron Consultants, Inc.*, 71 B.R. 1005, 1011 (N.D.Tex.1987). So long as the bankruptcy court's findings of willful and malicious conduct are not clearly erroneous, its judgment that the Cedar Springs debt is nondischargeable will be affirmed.

## C

James next argues that the bankruptcy court's § 523(a)(6) finding is clearly erroneous.

### 1

■ This court recently summarized the applicable standards for appellate review of the bankruptcy court's factual findings. *See In re Placid Oil Co.*, 158 B.R. 404, 412 (N.D.Tex.1993). The court reviews the fact findings of the bankruptcy court and the inferences to be drawn therefrom under the clearly erroneous standard. *Id.* (citing Fed. R.Bankr.P. 8013; *In re Ambassador Park Hotel, Ltd.*, 61 B.R. 792, 798 (N.D.Tex.1986)). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Id.* (citing *In re Block Shim Dev. Co.—Irving*, 118 B.R. 450, 453 (N.D.Tex. 1990), *aff'd*, 939 F.2d 289 (5th Cir.1991)). "If the trier of fact's account of the evidence is plausible in light of the record viewed in its entirety, the appellate court may not reverse

it." *Id.* "[T]his court does not find facts. Neither is it free to view the evidence differently as a matter of choice." *Id.* (quoting *id.* at 456). The bankruptcy judge's "unique perspective to evaluate the witnesses and to consider the entire context of the evidence must be respected." *Id.* (quoting *Endrex Exploration Co. v. Pampell*, 97 B.R. 316, 323 (N.D.Tex.1989)). "The question is whether the bankruptcy court's assessment of the evidence was clear error." *Id.* (quoting *In re Block Shim*, 118 B.R. at 456).

### 2

■ The bankruptcy court adopted the findings of fact contained in its first ruling, *see In re Smith*, 113 B.R. at 298–304, and made the following relevant findings of fact that are not clearly erroneous. VSLA's DRPI subsidiary had problem loans that VSLA wanted to remove from its books in order to "avoid facing auditing requirements to write down the value of the loans as assets." VSLA desired to give the illusion of the sale of the properties and new loans. James and Vernon conspired with Dixon to purchase the Cedar Springs property, using a loan from VSLA. James and Vernon "knew they could not service the loan and had an agreement with [VSLA] that they ... would not be obligated to make interest payments on the loan." At the time of the loan, James and Vernon were experiencing financial difficulties, and default on the Cedar Springs note was reasonably foreseeable. In exchange for their participation in the conspiracy, James and Vernon were promised future financial assistance for their financially strapped enterprises. When they executed the loan documents, James and Vernon concealed information about the true use of

9. In his brief, James reiterates in a footnote his position that the FDIC–Receiver did not prove its status as owner and holder of the Cedar Springs note. *See* Appellant Br. at 20 n. 15. The bankruptcy court held that because James did not file objections to the FDIC–Receiver's proofs of claims, the requirement that the FDIC–Receiver prove its status was waived. *See In re Smith*, 113 B.R. at 299 n. 2. James has not demonstrated that the bankruptcy court committed reversible error in determining that he waived this objection.

James also contends that § 523(a)(2)(A), which specifically precludes the discharge of a debt

involving fraud, is mutually exclusive of § 523(a)(6). *See In re Price*, 123 B.R. 42, 45 (Bankr.N.D.Ill.1991) ("willful and malicious injury" does not include fraud; §§ 523(a)(2)(A) and (a)(6) are mutually exclusive). This argument lacks merit. Several courts have held that fraudulent conduct can make a debt dischargeable pursuant to § 523(a)(6). *See, e.g., In re Culp*, 140 B.R. at 1015; *In re Powell*, 95 B.R. at 240; *In re Figge*, 94 B.R. 654, 669 (Bankr.C.D.Cal.1988), *aff'd on other grounds*, 928 F.2d 1136 (9th Cir. 1991). The court concludes §§ 523(a)(2)(A) and 523(a)(6) are not mutually exclusive.

the loan and concerning an additional $170,-000 unsecured loan not placed in the loan binder. James and Vernon "knew or should have known, that their actions knowingly done without just cause or excuse would result in an injury to the insurance fund." Their conduct resulted in injury to the FDIC–Receiver in the amount of the debt.

The bankruptcy court did not clearly err in its determination that James' actions were willful and malicious.[10] The trial testimony supports the bankruptcy court's findings that James knew about and concealed the true nature and amount of the Cedar Springs loan. Like the *Culp* debtor, James participated in a scheme that "management hoped would lull and satisfy Federal regulators." *In re Culp*, 140 B.R. at 1009. Omitted from the loan documents and concealed from the federal loan examiners were several important facts, including that James would never have to make an interest payment on the Cedar Springs loan, that VSLA would arrange for the property to be repurchased, and that the loan amount exceeded the value of the property. As in *Culp*, this is the type of activity that produces harm to the FDIC by aiding in the false depiction of a sound loan from a secure institution. The bankruptcy court did not clearly err in finding that James' participation in the scheme to conceal from federal regulators the true nature and amount of the Cedar Springs loan constituted willful and malicious conduct.[11]

James also contends his conduct was not malicious because he acted with "just cause."

The bankruptcy court recognized that under § 523(a)(6), the term "malicious" means the debtor acted without "just cause or excuse." The court rejected James' contention that he had just cause because he believed he would ultimately develop the Cedar Springs tract. The court found that he concealed the true nature and amount of the loan, knew he could not develop the property during the term of the loan, and knew he could not repay the loan. These findings are not clearly erroneous. The court did not err, therefore, in finding that James lacked just cause.

The bankruptcy court did not clearly err in determining that James' conduct was willful and malicious so as to preclude discharge on the basis of § 523(a)(6).[12]

### D

James next appeals the bankruptcy court's determination regarding damages. The bankruptcy court found the FDIC–Receiver had been injured in the amount of the entire debt. It therefore held pursuant to § 523(a)(6) that the full amount of the Cedar Springs debt, plus interest, was nondischargeable. James' challenge to this holding appears to be that the bankruptcy court clearly erred in finding this to be the amount of the FDIC–Receiver's damages.[13]

"[T]he appropriate measure for nondischargeability under § 523(a)(6) is an amount equal to the injury caused by the debtor rather than any other sum owed by the debtor on a contractual basis." *In re*

---

**10.** In its findings following remand, the court did not explicitly find *in haec verba* that James had "willfully and maliciously" caused injury to the FDIC with respect to the Cedar Springs loan. The court expressly recognized, however, that § 523(a)(6) requires willful and malicious conduct, *see* Mem.Op. at 4 (citing *In re Smith*, 113 B.R. at 310), 5, and 11, and found specifically that James and Vernon "knew or should have known, that their actions knowingly done without just cause or excuse would result in an injury to the insurance fund," *id.* at 11, and that they "deliberately and without just cause or excuse ... caused the insurance fund to be exposed to loss by a loan that could not be paid," *id.* at 12. These are the constituent elements of "willful and malicious" injury and constitute adequate findings of conduct that renders a debt nondischargeable pursuant to § 523(a)(6).

**11.** James also argues that because the bankruptcy court found that James participated in a conspiracy to conceal information, the FDIC–Receiver had to prove the essential elements of a conspiracy. The relevant question, however, is whether James engaged in "willful and malicious" conduct. This issue can be analyzed without considering whether the essential elements of a conspiracy have been shown.

**12.** James also argues that the bankruptcy court erred in its finding of a conspiracy. For the reason explained *supra* at n. 11, the court need not address this contention.

**13.** James reurges the contention that § 523(a)(6) does not apply in this context. The court declines to accept this proposition for the reasons previously set out.

*Modicue,* 926 F.2d 452, 453 (5th Cir.1991) (per curiam). The bankruptcy court correctly recognized this measure as the applicable legal standard. *See* Mem.Op. at 5 (citing *In re Modicue* ). Therefore, the court's determination can be reversed only if it clearly erred in its factual finding.

James argues the bankruptcy court erroneously held the entire debt, plus interest, to be nondischargeable when the evidence supported only a lesser injury. According to James, the evidence, viewed favorably to the judgment, shows that VSLA simply replaced James and Vernon as the borrowers on a nonperforming loan. James' failure to pay the loan could not have injured the FDIC–Receiver to the full extent of the debt because the prior loan was already in default. The FDIC–Receiver could not have incurred a distinct injury when VSLA made the loan to James because the lender was placed in no worse position. James recognizes the bankruptcy court's findings that the scheme exposed the insurance fund to a concealed risk that, if known, would have been timely addressed and remedied. He argues, however, that the injury caused by concealment of the default status of the Cedar Springs loan from 1985 to 1987 does not equal the entire debt. Instead, it is the difference between the amount of the loss in 1985 (had the problem been revealed) and the actual amount of the loss in 1987 (when James filed for bankruptcy). James characterizes this injury as being in the nature of "delay damage." He contends that because the court below made no findings concerning this measure of damage, this court must reverse and render judgment holding the debt discharged.

The court disagrees with James' position. The bankruptcy court explicitly rejected an argument similar to the one James now advances. In so doing, it found that if there had been no scheme to conceal, VSLA would have been required to foreclose on the real property that secured the debt and attempt to sell the property on the market to an "actual buyer," or write down the asset on its books, or both. VSLA's loss "would have been addressed and fixed in time." When it was not, the insurance fund suffered a loss "by the amount of the debt."

James has not shown that these findings are clearly erroneous. He has instead assumed—contrary to the bankruptcy court's findings—that the Cedar Springs loss would not have been avoided in 1985 and would have continued unabated until 1987. On the basis that the loan would have been nonperforming on both occasions, he contends the only loss could be "delay damage."

This reasoning has superficial appeal, but it ultimately fails because it proffers a hypothetical scenario that lacks support in the bankruptcy court's findings. The bankruptcy court determined that the insurance fund would not have been injured at all had the scheme not been perpetrated. The loss stemming from the loan to the prior borrower would have been "addressed and fixed." James has not shown this finding to be clearly erroneous. He cannot urge, then, that the loan would have represented a loss both in 1985 and 1987. This proposition is fundamental to his "delay damage" argument. Without it, the argument fails.

Because the bankruptcy court did not clearly err in its relevant findings, it likewise did not err in holding that the § 523(a)(6) injury to the insurance fund extended to the entire amount of the debt, plus interest.

### III

■ The court now turns to the FDIC–Receiver's cross-appeal from the bankruptcy court's discharge of the Celestial/Montfort debt.

The bankruptcy court held the Celestial/Montfort debt was discharged because the FDIC–Receiver had not proved its § 523(a)(6) injury. The court determined that unlike the Cedar Springs loan, the amount of the Celestial/Montfort debt did not define the injury to the FDIC–Receiver because VSLA obtained a security interest in the real property. The court decided that the injury suffered by the FDIC–Receiver must, at a minimum, be the difference between the debt and the value of the collateral that the FDIC–Receiver could realize. Because the FDIC–Receiver offered conflicting testimony regarding whether it had foreclosed on the real estate that secured the loan, it

did not establish the amount of its injury, thus precluding the bankruptcy court from making an injury finding.

The FDIC–Receiver argues that it proved the amount of its damages. It contends it called Susan Mather ("Mather"), its records custodian, to testify that the Celestial/Montfort property had been sold in foreclosure for one dollar, which had been credited toward the debt. The FDIC–Receiver urges that Mather also established that the original principal amount of $1,586,236.36, as well as the interest that had accrued, remained outstanding, and that the FDIC–Receiver had recovered nothing other than the sum of one dollar. It posits that it satisfied its burden of proof because the debtor did not challenge the amount claimed by the FDIC–Receiver as a deficiency, and because it offered no conflicting testimony.

 Fed.R.Bankr.P. 4005 provides that the burden of proof in objecting to a discharge rests on the party seeking to establish that the debt is nondischargeable. It is a general rule of proof—which this court holds is applicable in the present context—that "if the evidence is such that a decision on a point cannot be made one way or the other, the party with the burden of proof loses." *Texas Distrib., Inc. v. Local 100, United Ass'n of Journeymen,* 598 F.2d 393, 402 (5th Cir.1979) (concluding that finding of fact by district court was not clearly erroneous even if it was "a rather close call"). Additionally, "[w]here two equally justifiable inferences may be drawn from the facts proven, one for and the other against the Plaintiff, neither is proven, and the verdict must be against him who had the burden of proof." *Texas Co. v. Hood,* 161 F.2d 618, 620 (5th Cir.), *cert. denied,* 332 U.S. 829, 68 S.Ct. 206, 92 L.Ed. 403 (1947).

The FDIC–Receiver, the party with the burden of proof, presented at trial conflicting testimony regarding foreclosure of the Celestial/Montfort property. Mather stated that the property had been sold in foreclosure for one dollar. Gregory O'Dean, the FDIC–Receiver's regional manager, testified the FDIC–Receiver had not yet foreclosed on the Celestial/Montfort property. In order for the bankruptcy court to determine the amount of injury to the FDIC–Receiver, it needed to know the value the FDIC–Receiver could receive for the real estate securing the loan. The FDIC–Receiver failed to prove this part of the equation.

Although James offered no evidence in opposition to the FDIC–Receiver's injury claim, the FDIC–Receiver produced conflicting testimony regarding whether the property was foreclosed. The bankruptcy court, as trier of fact, held that it could not determine whether the FDIC–Receiver had been injured. The court did not clearly err in holding the FDIC–Receiver had not proved its injury. Accordingly, the bankruptcy court did not err in deciding the Celestial/Montfort debt was discharged.

\* \* \*

The judgment of the bankruptcy court is

AFFIRMED.