**In re A. Scott THOMPSON, Debtor.**

**Nancy Gail HUGGINS, Plaintiff,**

v.

**A. Scott THOMPSON, Defendant.**

**Bankruptcy No. 393–32736 RCM–7. Adv. No. 393–3482.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

April 1, 1994.

---

LaDonna K. Ockinga, Dallas, TX, for plaintiff.

A. Scott Thompson, III, Carrollton, TX, pro se.

## MEMORANDUM OPINION

ROBERT McGUIRE, Chief Judge.

Following are the Court's findings of fact and conclusions of law, under Bankruptcy Rule 7052, with respect to the trial heard March 9, 1994.

This is an adversary proceeding to determine the dischargeability of a debt under § 523(a)(6) only.

This is a core proceeding over which this Court has jurisdiction under 28 U.S.C. § 157(b).

A. Scott Thompson ("Defendant"), the debtor in the above-entitled Chapter 7 case, is an individual. Nancy Gail Huggins ("Plaintiff") is a creditor of Defendant.

Defendant is indebted to Plaintiff in the sum of $21,546.13 for attorney services rendered prior to the commencement of the case.

On June 17, 1992, Defendant assigned to Plaintiff all of his interest in any assets, including bank accounts, stocks, IRA's, money market accounts, retirement funds, or any other personalty which he might receive in the divorce pending between him and his then wife, B. Jeanne Thompson. Plaintiff contends that the assignment was to secure past and future services of Plaintiff, as attorney in the divorce action. However, the terms of the assignment limit it to use of the assigned property to pay the then existing debt of $8,244.78. The assignment does not purport to collateralize future debt, except interest and attorney fees on the $8,244.78 debt. In connection with the assignment, Defendant executed a $8,244.78 note to Plaintiff on June 17, 1992. This was the amount of attorney fees that was then due to Plaintiff.

The assignment additionally provided: "At the request of Assignee [Plaintiff], Assignor [Defendant] will execute any additional documents necessary to effectuate this Assignment."

Plaintiff represented Defendant through a trial and obtained a decree of divorce October 7, 1992.

Defendant incurred an additional $13,-291.35 in attorney fees in trying the divorce case, for a total amount owed of $21,536.13.

During the pendency of the divorce, there was a mutual injunction entered by the Domestic Relations Court prohibiting Defendant and his wife from transferring their property.

Defendant received, through his decree of divorce, the following property:

| | |
|---|---:|
| An oil lease to a ⅙ working interest in the Reeves P & Y Property purchased March 22, 1990, valued at | $3,500.00 |
| Texas Commerce Bank Checking | $90.00 |
| Texas Commerce Bank Savings | $20.00 |
| USAA Subscriber Savings | $203.30 |
| Fidelity OTC Keogh Plan | $2,476.00 |
| Fidelity Freedom Retirement Growth Keogh | $1,146.00 |
| 12 shares Reebok, International | $406.50 |
| 1.65 shares U.S. Bioscience, Inc. @ $6.75 per share (received 1 share and $4.39 cash for the fractional share) | $6.75 $4.39 |
| 46 shares La Petite Academy, Inc. | $437.00 |
| 2 shares UGI Corporation | $49.75 |
| 150 shares Capstead Mortgage Corporation | $6,075.00 |
| 1977 Regal Duchess (inboard/outboard boat), motor, trailer and related equipment valued at | $2,500.00 |
| 1990 Lincoln Town Car equity of | $2,500.00 |
| * 1980 Toyota Pickup | $762.50 |
| | $20,177.19 |

* Defendant never obtained possession of the Toyota because of failure to pick it up during a court-imposed transfer period; however, his failure to promptly pick it up was not deliberate or willful, and was caused, at least in part, by his late receipt of the divorce documents.

The above property was disposed of by Defendant as follows:

On May 18, 1992, Defendant assigned an oil lease to a ⅙ working interest in the Reeves P & Y Property purchased March 22, 1990 for a loan of $3,000. On his inventory, Defendant valued this property at $3,500. On December 29, 1992, Defendant transferred this oil lease to Ms. Waldron. Defendant's pleadings contend that there was a $3,000 lien on the oil and gas lease before his assignment to Plaintiff, and that the Waldron transfer was to just extinguish the debt; however, he offered no testimony on this at trial — $3,500.00

Disposed of the money in the following accounts:
Texas Commerce Bank Checking — $90.00
Texas Commerce Bank Savings — $20.00
USAA Subscriber Savings — $203.30
Defendant received the following, and, either used the money personally, or placed the funds in his IRA:
Fidelity OTC Keogh Plan — $2,476.00
Fidelity Freedom Retirement Growth Keogh — $1,146.00
Defendant received the following stock, and, either used the money personally or placed the funds in his IRA:
12 shares Reebok, International — $406.50
1.65 shares U.S. Bioscience, Inc. — $6.75
46 shares La Petite Academy, Inc. — $437.00
2 shares UGI Corporation — $49.75
150 shares Capstead Mortgage Corporation — $6,075.00
Defendant retained the 1977 Regal Duchess inboard/outboard boat, motor, trailer, and related equipment, and refused to turn over to Plaintiff or execute the necessary papers to make such a transfer — $2,500.00
Defendant, on November 6, 1992, encumbered the 1990 Lincoln Town Car and received a $2,500.53 payment, which he used personally or placed in his IRA — $2,500.00

$19,410.30

The above-described transfers were made without the knowledge or consent of Plaintiff. Such action was done intentionally.

Defendant used the money because he primarily needed same for living and dental expenses. He also testified that he thought Plaintiff had an unsecured debt. It appears that such latter belief occurred to Defendant at some time after he obtained possession of the property, and not at the time of entering into the assignment.

Plaintiff contends Defendant should turn over the following property to her:

1977 Regal Duchess inboard/outboard boat, motor, trailer and related equipment — $2,500.00
Texas Commerce Bank Checking — $90.00
Texas Commerce Bank Savings — $20.00
USAA Subscriber Savings — $203.30
Fidelity Trust Co. Cust IRA — $5,617.55

$8,430.85

However, Plaintiff has no perfected security interest in same. To the extent Defendant's exemption claim to any of same is disallowed, the Chapter 7 Trustee would own such property and the Trustee has not been joined as a party in this adversary. There is a pending objection by Plaintiff to some of Defendant's claimed exemptions; however, same has not been brought on for hearing.

Plaintiff has incurred reasonable attorney fees and expenses of $3,800, which her note allows her to recover if this debt is non-dischargeable.

The 1990 Lincoln Town Car was and is financed through USAA Federal Savings Bank.

Insofar as the third parties are concerned, Plaintiff did not perfect any security interest

in any of the prospective collateral. The assignment of the trailer and Lincoln did not perfect any interest in the Lincoln or Trailer for failure to comply with certificate of title registrations regarding interest in such vehicles. Apparently, Plaintiff never attempted to give any type of notice of attempted perfection of assignment to any financial institution holding an IRA in which Plaintiff claimed an interest. Plaintiff's responsive explanation was that, during the divorce, Defendant was under a reciprocal restraining order, and, post-divorce, she got the divorce division papers late from the court or other attorney, and when she attempted to contact Defendant about the transfers, he either avoided her or told her he had not received the property yet. The latter statement was not truthful.

In *Central Sav. & Loan v. Stemmons Northwest,* 848 S.W.2d 232, 238 and 240 (Tex. Civ.App.—Dallas 1992), the court stated:

The parties' contractual relationship may create duties under both contract and tort law. *See Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508, 510 (1947). A party's actions may breach duties in contract or tort alone or simultaneously in both. The nature of the injury usually determine which duty or duties are breached. *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex. 1986). When the injury is only the economic loss to the subject of a contract itself, the action sounds only in contract. *See Mid–Continent Aircraft Corp. v. Curry County Spraying Serv.,* 572 S.W.2d 308, 312 (Tex.1978).

\* \* \* \* \* \*

Generally, failure to perform the terms of the contract yields contract liability, not tort liability. However, a contract to perform in the future is actionable fraud when a party makes it with the intention, design, and purpose of deceiving and with no intention of performing. *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex. 1986). A party's failure to perform the contract, standing alone, is no evidence of that party's intent not to perform at the time the party made the contract. *Crim Truck & Tractor Co.,* 823 S.W.2d at 597; *Spoljaric,* 708 S.W.2d at 435.

When a party suffers only economic injury to the subject matter of the contract, the action sounds in contract, not in tort. *Jim Walter Homes,* 711 S.W.2d at 618. Again, a plaintiff must allege and prove distinct actual damages attributable to the fraud and not attributable to the breach of contract for the claim to survive. *See Schindler v. Austwell Farmers Co–op.,* 829 S.W.2d 283, 290 (Tex.App.—Corpus Christi 1992), *aff'd as modified per curiam,* 841 S.W.2d 853 (1992).

To the same effect, see *Crim Truck & Tractor v. Navistar Intern.,* 823 S.W.2d 591, 594, 597 (Tex.1992). At pp. 594–595, the *Crim* court stated, in part:

... a party to a contract is free to pursue its own interests, even if it results in a breach of that contract, without incurring tort liability. *See Amoco Production Co. v. Alexander,* 622 S.W.2d 563, 571 (Tex. 1981). The fact that one businessman trusts another, and relies upon his promise to perform a contract, does not rise to a confidential relationship. [Citations omitted]. Every contract includes an element of confidence and trust that each party will faithfully perform his obligation under the contract.

The assignment was in consideration for past and future performance under an attorney services contract. There was insufficient proof that Defendant entered into it with the intention, design and purpose of deceiving and with no intention of performing it. *Spoljaric v. Percival Tours, Inc., supra.* Defendant's failure to perform to the contract, standing alone, is no evidence of his intent not to perform at the time he made the contract. *Spoljaric v. Percival Tours, Inc., supra* at 435.

There was no showing of a "special relationship" running from Defendant to Plaintiff. "Absent such a special relationship, the duty to act in good faith is contractual in nature. *Crim Truck & Tractor,* 823 S.W.2d at 595 n. 5." *Central Sav. & Loan v. Stemmons Northwest, supra* at 242. For a discussion of what constitutes a special relationship, see *Arnold v. Nat. County Mut. Fire Ins. Co.,* 725 S.W.2d 165 (Tex.1987), and the Spears dissent in *English v. Fischer,* 660

S.W.2d 521 (Tex.1983). *Also see, Transportation Ins. Co. v. Moriel,* 1994 WL 246568 (Tex.1994).

"Willful", as used in § 523(a)(6), means deliberate or intentional. "Malicious", as used, means in conscious disregard of one's duties, or without just cause or excuse, and does not require ill will or specific intent to do harm. *In re Dean,* 79 B.R. 659 (Bankr. N.D.Tex.1987); *In re Smith,* 160 B.R. 549 (N.D.Tex.1993); *Chrysler Credit Corp. v. Perry Chrysler Plymouth,* 783 F.2d 480 (5th Cir.1986). Plaintiff cites *In re Smith* for the proposition that a debtor may engage in willful or malicious conduct within the meaning of § 523(a)(6) even though defendant's conduct does not constitute an independent tort. All the cases referred to in support of such proposition are tortious-type claims, *e.g.,* forgery, false note to mislead bank regulators, false financial statement, and actual fraud. The court, in *In re Riso,* 978 F.2d 1151 (9th Cir.1992), held that simple breach of contract is not the type of injury addressed by § 523(a)(6), and that—

> [a]n intentional breach of contract is excepted from discharge under § 523(a)(6) only when it is accompanied by malicious and willful tortious conduct. *In re Moultrie,* 51 B.R. 368, 373 (Bankr.W.D.Wash. 1985); *In re Haynes,* 19 B.R. 849, 851 (Bankr.E.D.Mich.1982). Nothing in the record indicates that the Risos' intentional breach of the right of first refusal *was tortious* in the context of this case.

*Id.* at 1154. (Emphasis added). After Defendant obtained the property, he was of the opinion that Plaintiff had an unsecured claim against him. This was true. Even if *In re Smith, supra,* is correct in its proposition that there can be willful and malicious conduct within the meaning of § 523(a)(6), even though such conduct does not constitute an independent tort,[1] it appears that, while Defendant's conduct was intentional, and, therefore, "willful", it was not "malicious", *i.e.,*

without just cause or excuse. As an unsecured claimant, Plaintiff merely had a claim against Defendant for money. Even though he disposed of the property referred to in the assignment, Plaintiff still had her unsecured contract claim against him. In the typical conversion case, the claimant would lose his actual collateral property. Nothing in this record indicates that Defendant's intentional breach of contract was of a tortious nature, or was malicious within the meaning of § 523(a)(6).

In *Fontana v. Barham,* 707 F.2d 221 (5th Cir.1983), the court discussed a civil rights action brought by an attorney against an attorney and law firm, alleging a conspiracy to violate his constitutional rights by deprivation of his contingent fee contract. In the course of such opinion, the court opined as follows:

> The exact nature of Fontana's property interest merits brief discussion. An attorney has no constitutional right to have himself listed as a payee on a check issued in judgment to a client. Basically, the only property right at stake here is Fontana's contractual right to the payment of attorneys' fees, which arises out of the contingent fee agreement between Fontana and Mrs. Cheatham. Fontana's right to attorneys' fees, the claim he holds against Mrs. Cheatham for the rendering of legal services to her, is simply a chose in action based upon the underlying contractual obligation between them. As such, Fontana's claim is a species of property protected by the fourteenth amendment. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422 [428–30], 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982) (cause of action is property for purposes of fourteenth amendment); citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). *See also* Terrell, *Causes of Action as Property: Logan v. Zimmer-*

---

1. The *In re Riso* case and the cases cited by *Smith* appear to stand for the proposition that the § 523(a)(6) conduct complained of must at least be of a tortious nature, rather than mere breach of contract. In *In re Riso, supra* at 1153, the court stated:

    The issue in this case is whether a right of first refusal is 'property' under § 523(a)(6). [Foot-

note omitted]. We conclude that the limited right of first refusal in this case is merely a contract right, not a property interest. The policies of the Bankruptcy Code dictate that this limited right of first refusal, as with other contract rights, is not a protected interest in property that is excepted from discharge.

*man Brush Co. and the 'Government-as-Monopolist' Theory of the Due Process Clause*, 31 Emory L.J. 491, 507–08 (1982).

\* \* \* \* \* \*

All Fontana ever had was a claim for attorneys' fees, a claim he retains to this day. In no way has he been divested of his entitlement to pursue the enforcement of that claim. His chose in action remains actionable; his property interest is still intact. We therefore find presented in this complaint no deprivation of Fontana's protected property interest.

*Id.* at 226–227.

■ Plaintiff failed to prove a § 523(a)(6) claim by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991); *In re Luce*, 960 F.2d 1277, 1281 (5th Cir.1992). Section 523 is to be narrowly construed. *In re Smith, supra* at 553.

Judgment will be entered in accordance with the foregoing opinion.

### FINAL JUDGMENT

For the reasons stated in the Memorandum Opinion signed this date, it is, therefore,

**ORDERED** that Nancy Gail Huggins' § 523(a)(6) claim against A. Scott Thompson is **DENIED.**